[No. F014606. Fifth Dist. July 22, 1992.]

THE PEOPLE, Plaintiff and Respondent v.
LINDA GAIL ZARING, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Mark E. Cutler and Madeline McDowell, under appointments by the Court of Appeal, for Defendant and Appellant.

Ann Brick, Edward M. Chen, Matthew A. Coles, Margaret C. Crosby and Alan L. Schlosser as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Edgar A. Kerry and Jane Olmos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, J.—**

### FACTS

At approximately 4:30 p.m. on June 16, 1990, Deputy Coker from the Tulare County Sheriff's Department was patrolling Terra Bella and the C.C.& F. Trailer Park when she observed a parolee-at-large walking with appellant.

When the parolee saw the patrol car, he ran. The deputy followed the parolee and watched him run inside a market. It was the same market that the deputy had observed appellant enter moments before.

The deputy entered the market looking for the parolee. Inside the market, the deputy contacted appellant and asked her the whereabouts of the parolee. Appellant denied seeing anyone. The deputy asked if she would step outside so they could talk. Appellant said, "No, Coker, or you will arrest me." Appellant and the deputy continued to talk. While talking with appellant, the deputy observed appellant's pupils to be constricted and visible puncture marks on the side of her neck. Appellant's mouth was noticeably dry and her speech was slow and deliberate. Deputy Coker formed the opinion that appellant was under the influence of heroin and arrested her for being under the influence of a controlled substance.

After the arrest, appellant was transported to the Porterville substation. During a booking search, the deputy found a bindle containing a black tarry substance in appellant's undergarments. The substance was later analyzed and found to contain 0.1 gram of heroin. Appellant gave a urine specimen. A urinalysis confirmed the presence of morphine, codeine and Benzocaine in appellant's system.

On July 17, 1990, appellant was charged by information in count one with violating Health and Safety Code section 11350, subdivision (a) (possession

of heroin), a felony, and in count two, with violating Health and Safety Code section 11550 (unlawfully using and being under the influence of a heroin), a misdemeanor. It was further alleged in connection with count one that appellant had served a prior prison term for being convicted of petty theft with a prior conviction within the meaning of Penal Code section 667.5, subdivision (b).

On July 18, 1990, appellant entered her pleas of not guilty to all counts and denied the special allegation.

On July 25, 1990, appellant filed a motion to suppress evidence pursuant to Penal Code section 1538.5. Appellant contended that all of Deputy Coker's observations of appellant's physical condition, as well as the physical evidence obtained from appellant at the time of her arrest, should be suppressed as the products of an illegal detention. On August 3, 1990, Judge John P. Moran heard the motion and took it under submission. Judge Moran denied the motion on August 6, 1990, by written minute order.

On August 15, 1990, appellant entered into a plea bargain wherein she pleaded guilty as charged and admitted her prior prison term, and Judge Howard R. Broadman agreed that he would not sentence appellant to more than two years in state prison.

On September 14, 1990, imposition of sentence on the felony possession of heroin count was suspended. Judge Broadman placed appellant on probation for a period of five years on certain terms and conditions, including that she serve 365 days in the county jail and that she "not get pregnant during the term of her probation." The "667.5 enhancement" was ordered stayed. Appellant appears to have been sentenced to 90 days in jail on the misdemeanor conviction for being under the influence of heroin, and to have served that time while awaiting her sentencing.

On September 17, 1990, appellant filed her timely notice of appeal from the order denying her motion to suppress evidence. This court designated that appeal as No. F014606.

On November 15, 1990, Judge Broadman modified the condition of probation which required that appellant serve a term in the county jail, changing it to "time served." Judge Broadman released her from custody and continued the matter to November 19, 1990, a Monday, at 8:30 a.m. in Department 7 for further hearing on her acceptance into the Third Floor drug program. He admonished appellant that "[i]f you're not back in this courtroom at 8:30 a.m. on Monday morning with a full report as to what your

status is with Third Floor, if you're not back in this courtroom at 8:30, you're going to go to prison."

On November 19, 1990, appellant, according to undisputed testimony, appeared 22 minutes late for her 8:30 a.m. court appearance. Judge Broadman called her case at approximately 8:30 a.m. and the following colloquy took place between Judge Broadman and appellant's attorney as the court summarily revoked her probation.

"THE COURT: What did we find out about Zaring? She's not here?

"MR. MUETING [Appellant's counsel]: Well, it's two minutes after 8:30.

"THE COURT: She's going to prison. That's the end of the story with Mrs. Zaring.

"MR. MUETING: She may have a reason. She may be there. I don't know. They indicated—

"THE COURT: No, no, she's not supposed to be there. She's supposed to be here.

"MR. MUETING: I don't know where she is right now. When I talked to the Third Floor they indicated that at this present time that she would be moved up on the waiting list. She was on one waiting list and moved to another waiting list, and that position would be open in about a week or so. Maybe two weeks. They recommended that she wait in custody to go in. I don't know where she is right now.

"THE COURT: You have two ladies of yours that I'm out looking for. Have you heard from the pregnant one?

"MR. MUETING: No, I haven't heard from her.

"MR. GALLIAN: Miss Zaring—my file indicates she was released on the 15th.

"THE COURT: She was released on the 15th, and she was ordered to be back here at 8:30. I told her she ought to camp out here so she wouldn't be late.

"MR. GALLIAN: My file indicates we were jumping up and down asking you not to, and you said, 'I'm going to give her this chance. If she doesn't show, she's going to prison.'

"MR. MUETING: She may be here late. I don't know. We'll see."

"(Whereupon, unrelated matters were taken up.)"

When appellant appeared at approximately 8:52 a.m., the following exchange took place between Judge Broadman and appellant as Judge Broadman remanded her into custody and set bail at $25,000.

"THE COURT: Miss Zaring, you're remanded to the custody of the Tulare County Sheriff and placed on for a violation of probation hearing on December the 3rd. Bail set in the amount of $25,000.

"THE DEFENDANT: Your honor, I was just a little bit late. I had to take my kids to school before I came over here from Porterville.

"THE COURT: What did I tell you? Goodbye. Don't look at me that way.

"(Whereupon, the proceedings were concluded.)"

The matter was set for hearing.

On November 21, 1990, appellant was arraigned on her violation of probation. Her violation of probation hearing was set for November 27, 1990.

On November 27, 1990, Judge Broadman, after hearing sworn testimony from appellant, found that she had willfully violated the terms of her probation by not appearing in court "on time" on November 19.

On November 29, 1990, Judge Broadman terminated probation and sentenced appellant to state prison for 16 months on her possession of heroin conviction under Health and Safety Code section 11350, plus 1 year for the prior prison term enhancement, for a total of 2 years and 4 months. Appellant was credited with serving 167 days in actual custody plus 84 days of conduct credits for a total of 251 days.

On January 2, 1991, appellant filed her timely notice of appeal from the judgment and sentence imposed. This court designated that appeal as No. F015192.

On March, 25, 1991, this court ordered the appeals in Nos. F014606 and F015192 consolidated.

On March 27, 1991, Judge Broadman recalled the sentence pursuant to Penal Code section 1170, subdivision (d), resentenced appellant to serve two

years for the drug possession conviction, and stayed the one year imposed for the prior prison term enhancement.

Appellant contends on appeal that: (1) her motion to suppress evidence was improperly denied; (2) the probation condition prohibiting pregnancy must be stricken; (3) the court deprived appellant of procedural due process when it revoked appellant's probation and committed her to state prison; (4) the court abused its discretion in sentencing appellant to state prison rather than reinstating probation; and (5) the court erred in sentencing appellant to two years on the possession charge after having previously sentenced her to 16 months on that charge.

## DISCUSSION

### I.

### *The Motion to Suppress\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.

### *The Probation Condition Prohibiting Pregnancy*

When Judge Broadman placed appellant on probation on September 14, 1990, a condition of that probation was that appellant "not get pregnant during the term of her probation." At the September 14 hearing, Judge Broadman and appellant had the following exchange:

"THE COURT: You are also ordered not to get pregnant during the term as condition of your probation which is a term of five years. I'll reconsider that term and condition of probation if you prove that you have gotten through this drug program . . . .

" . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"I want make [*sic*] to make it clear that one of the reasons I am making this order is you've got five children. You're thirty years old. None of your children are in your custody or control. Two of them on AFDC. And I'm afraid that if you get pregnant we're going to get a cocaine or heroin addicted baby.

"So come in and report to the Court on the first day of November. Make sure that you comply with the terms and conditions. If you get pregnant, I'm

---

*See footnote, *ante*, page 362.

going to send you to prison in large part because I want to protect the un-born child. But more importantly—that's the most important reason, but second of all, because you have violated a term and condition of your probation. Do you understand that?

"[APPELLANT]: Yes."

■ Appellant now contends that the condition that she not get pregnant during the term of her probation is unlawful and must be stricken. We agree.

Respondent does not challenge appellant's right to contest the condition on this appeal, even though appellant agreed to the condition in the superior court. It has been held that a defendant may challenge, on appeal, a condition of probation. "If . . . the defendant accepts probation, he may seek relief from the restraint of any alleged invalid condition of probation on appeal from the order granting probation . . . ." (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727], disapproved on other grounds in *People* v. *Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545]. See also *People* v. *Kiddoo* (1990) 225 Cal.App.3d 922 [275 Cal.Rptr. 298], at p. 927, and this court's opinion in *People* v. *Hernandez* (1991) 226 Cal.App.3d 1374, 1377 [277 Cal.Rptr. 444].)

Penal Code section 1203.1 states, in relevant part:

"The court . . . in the order granting probation, may suspend the imposing, or the execution, of the sentence . . . upon those terms and conditions as it shall determine . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . .

"The court may impose and require any . . . *reasonable* conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer, . . . ." (Italics added.)

In *People* v. *Dominguez* (1967) 256 Cal.App.2d 623 [64 Cal.Rptr. 290], the court addressed a probation condition of no pregnancy where the crime was robbery. In striking the condition, the court stated:

"A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself

criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (256 Cal.App.2d at p. 627.)

The California Supreme Court adopted the *Dominguez* test in *Lent, supra,* where the court stated:

"The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. (Pen. Code, § 1203 et seq.) A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" [Citations.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (15 Cal.3d at p. 486, fn. omitted.)

But even in those instances in which a condition of probation satisfies the *Dominguez/Lent* test, "where a condition of probation impinges upon the exercise of a fundamental right and is challenged on constitutional grounds we must additionally determine whether the condition is impermissibly overbroad." (*People* v. *Pointer* (1984) 151 Cal.App.3d 1128, 1139 [199 Cal.Rptr. 357], fn. omitted.) In *Pointer* a woman was convicted of child endangerment after she placed her two young children on a "rigorously disciplined macrobiotic diet" (*id.* at p. 1131, fn. omitted) which resulted in one of the children becoming "seriously underdeveloped" and the other suffering "severe growth retardation and permanent neurological damage." (*Id.* at p. 1133.) She was placed on probation, and as a condition of probation she was "prohibited from conceiving a child." (*Id.* at p. 1131.) In *Pointer,* as in the case presently before us, "[t]he challenged condition was apparently not intended to serve any rehabilitative purpose but rather to protect the public by preventing injury to an unborn child." (*Id.* at p. 1140.) The *Pointer* court, after concluding that the conception prohibition was reasonably related to the woman's child endangerment offense, then turned to the question of whether the conception prohibition was impermissibly overbroad, and stated:

"There is, of course, no question that the condition imposed in this case infringes the exercise of a fundamental right to privacy protected by both the federal and state constitutions. [Citations.] Nor is there any question that for this reason the condition must be subjected to special scrutiny to determine

whether the restriction is entirely necessary to serve the dual purposes of rehabilitation and public safety. [Citations.] ' "Where a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is *not* reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." [Citations.]' [Citations.] 'If available alternative means exist which are less violative of a constitutional right and are narrowly drawn so as to correlate more closely with the purpose contemplated, those alternatives should be used [citations].' [Citations.]" (151 Cal.App.3d at p. 1139, fn. omitted.)

The *Pointer* court concluded that the prohibition against conception was impermissibly overbroad. It stated:

"We believe this salutary purpose can adequately be served by alternative restrictions less subversive of appellant's fundamental right to procreate. Such less onerous conditions might include, for example, the requirement that appellant periodically submit to pregnancy testing; and that upon becoming pregnant she be required to follow an intensive prenatal and neonatal treatment program monitored by both the probation officer and by a supervising physician. If appellant bears a child during the period of probation it can be removed from her custody and placed in foster care, as was done with appellant's existing children, if the court then considers such action necessary to protect the infant.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"We conclude that the condition of probation prohibiting conception is overbroad, as less restrictive alternatives are available that would feasibly provide the protections the trial court properly believed necessary." (151 Cal.App.3d at pp. 1140-1141.)

In the present case, appellant and respondent disagree on whether the no pregnancy condition has a "relationship to the crime of which the offender was convicted" and thus satisfies the *Dominguez/Lent* test. Respondent contends that it does. Appellant, pointing out that the crimes which she committed did not endanger any child, and that there was no evidence before the court that any of her five children had been born addicted or born with any other ailment attributable to possession or use of drugs by appellant, contends that it does not. We need not decide this particular question,

however, because in this case, just as in *Pointer*, the no pregnancy condition is improper because it is impermissibly overbroad.[1]

In *Pointer*, the defendant was convicted of child endangerment because of her macrobiotic diet and her use of that diet with her children. In other words, her nutritional habits endangered her children as well as any unborn child. In the instant case, the crime of possession of heroin in and of itself does not appear to have any relationship to children born or unborn. The crime was not against a child, it did not endanger a child, and precluding pregnancy has no readily perceivable effect on rehabilitation as that concept is interpreted in the law. It is now widely believed that a pregnant woman can expose a fetus to danger by ingesting certain drugs during pregnancy, and we think that such an endangerment would be deplorable, but we are constrained by our oath to refrain from imposing our personal views on people brought before the bench.[2] It is the law which must guide our actions and not our preferences or inclinations. Recognizing that drug addiction could have an adverse impact on the unborn, we must conclude under the law that even if we were to assume arguendo that the safeguarding of the health of any yet to be conceived unborn child of appellant may properly be the subject of probation conditions, it is clear to us that other conditions, less drastic than an outright ban on pregnancy, could be used here to accomplish this objective, just as they could have been used in *Pointer*. We also note that

---

[1]We note that in *Dominguez, supra*, the crime of which the accused was convicted was robbery. The court found the no pregnancy condition to have no relationship to the crime of robbery and no reasonable relationship to future criminality. The court stated: "Appellant's future pregnancy was unrelated to robbery. Becoming pregnant while unmarried is a misfortune, not a crime. Appellant's future pregnancy had no reasonable relationship to future criminality. It is certainly not pragmatically demonstrable that unmarried, pregnant women are disposed to commit crimes. There is no rational basis to believe that poor, unmarried women tend to commit crimes upon becoming pregnant. Contraceptive failure is not an indicium of criminality." (*People v. Dominguez, supra*, 256 Cal.App.2d at p. 627.)

[2]Respondent has requested that the court take judicial notice of four items. These are: (1) "the information about the detrimental impact of drug use on children and the unborn child" (the request does not specify what "the information" is); (2) "public comments made by [Chief] Justice Malcolm Lucas in his fourth annual State of the Judiciary Address to the State Bar Conference of Delegates on August 26, 1990"; (3) an article by Petitti et al., *Cocaine and the Risk of Low Birth Weight* (1990) 80 Am. J. of Public Health; and (4) an article by Hadeed et al., *Maternal Cocaine Use During Pregnancy: Effect on the Newborn Infant* (1989) 84 Pediatrics. Respondent has quoted the Chief Justice's "public comments" in its brief and has provided the court with copies of the Petitti et al. and Hadeed et al. articles. All of these items appear to be intended to persuade us that the no pregnancy condition of appellant's probation has a "relationship to the crime of which the offender was convicted." (*Dominguez, supra*, at p. 627; *Lent, supra*, at p. 486.) Because we hold in this case that the no pregnancy condition is unlawful regardless of whether it does or does not have a relationship to appellant's crime, and because we need not and do not decide the question of whether the condition has a relationship to appellant's crime, these four items would not aid us in reaching our decision, even if we were to take judicial notice of them. Respondent's request is therefore denied.

other jurisdictions faced with the issue of whether a ban on pregnancy is a valid condition of probation have found the condition to be unlawful. (See *State* v. *Mosburg* (1989) 13 Kan.App.2d 257 [768 P.2d 313] and *Rodriguez* v. *State* (Fla.Dist.Ct.App. 1979) 378 So.2d 7. See also *State* v. *Livingston* (1976) 53 Ohio App.2d 195 [7 Ohio Ops.3d 258, 372 N.E.2d 1335, 94 A.L.R.3d 1213] [condition that "the defendant not have another child during the five year probationary period" is "void and of no effect"]).

It is important to bear in mind that in imposing a condition of probation the consequences of a violation cannot be ignored. As the court in *Pointer* noted, there is a highly troubling aspect to a condition imposing a preclusion upon conception. Judge Broadman here stated "if you get pregnant, I'm going to send you to prison. . . ." This is the same comment made by the judge in the *Pointer* case, although there the reviewing court noted that since the crime itself was child endangerment, the condition bore some relationship to the charge. In *Pointer* the reviewing court stated:

"This stern admonition doubtless made it apparent to appellant that in the event she became pregnant during the period of probation the surreptitious procuring of an abortion might be the only practical way to avoid going to prison. A condition of probation that might place a defendant in this position, and, if so, be coercive of abortion, is in our view improper." (*People* v. *Pointer*, *supra*, 151 Cal.App. 3d at pp. 1140-1141.)

We therefore conclude that whether or not the pregnancy condition imposed in this case might arguably bear upon the rehabilitative purposes of probation, the restriction imposed here is overbroad.

There are other disturbing aspects of this case upon which we should comment. Specifically, we note the apparent imposition of personal social values in the sentencing decision. Some of the comments made by Judge Broadman in the instant case are remarkably comparable to comments made by the trial judge in *Dominguez*. In that case, the appellant was 20 years old, unmarried, pregnant, and had 2 small children. She had been on public assistance since her first pregnancy. The court stated:

" '[Y]ou are not to live with any man to whom you are not married and you are not to become pregnant until after you become married. Now this will develop by just becoming pregnant. You are going to prison unless you are married first. You have already too many of those. Do you understand that [*sic*] I am saying?' The appellant replied affirmatively. The court then stated, 'Do you know where the Planned Parenthood Clinic is?' The defendant said she did not. The court said, 'If you insist on this kind of conduct you

can at least consider the other people in society who are taking care of your children. You've had too many that some others are taking care of other than you and the father.' " (*People* v *Dominguez, supra,* 256 Cal.App.2d at p. 625.)

At the time of the violation of probation when the appellant became pregnant, the court stated to her attorney, " '[s]tart mentioning the responsibility or lack of it insofar as supporting the children she now has and the ability to support the one she is having. . . . She is abandoning that responsibility to somebody else. . . .' " The court added, " '[i]t appears to me this woman is irresponsible; she is foisting obligations upon others, and one of the objectives of probation is to teach and encourage responsibility in all phases including the economics of life and being able to support the dependents who will naturally flow from this conduct.' " (*Dominguez, supra,* 256 Cal.App.2d at p. 626.)

Judge Broadman in the instant case stated in making his condition precluding pregnancy:

"I want make [*sic*] to make it clear that one of the reasons I am making this order is you've got five children. You're 30 years old. None of your children are in your custody or control. Two of them on AFDC. And I'm afraid that if you get pregnant we're going to get a cocaine or heroin addicted baby."

While he is often the center of controversy, the following comment of former Justice Robert Bork in a speech to the American Enterprise Institute well states our role as judges in the often difficult and trying task of rising above our personal views to render impartial judgment.

"In a constitutional democracy, the moral content of law must be given by the morality of the framer or the legislator, never by the morality of the judge. The sole task of the latter—and it is a task quite large enough for anyone's wisdom, skill and virtue—is to translate the framer's or the legislator's morality into a rule to govern unforeseen circumstances. That abstinence from giving his own desires free play, that continuing and self-conscious renunciation of power, that is the morality of the jurist."

In our view, the morality of having children while on public assistance, and the imposing of any constitutionally permissible legal deterrences to such a practice, are matters properly left to the wisdom and judgment of the legislature elected by the people, and not to the morality of individual judges. The comments by the trial court imply consideration of inappropriate factors in the sentencing process under the facts of this case.

Because in this case appellant has already served the prison term to which she was sentenced on March 27, 1991, and indeed had completed the serving of that prison term by the time her reply brief was filed in this court, we need not and do not address the question of whether the judge could properly have imposed, in this case, any condition of probation having to do with the monitoring of any possible future pregnancy of appellant. We do conclude, however, that under the facts of this case a ban on conception was illegal under the law.

## III.

### *The Revocation of Appellant's Probation*

Appellant contends that Judge Broadman erred in concluding she was in violation of her probation and sentencing her to state prison based upon her appearance in court 22 minutes late. Appellant's contention is predicated on five separate arguments, namely that: (1) appearance at 8:30 on November 19, 1990, was not in fact a condition of her probation at all, but was merely a separate court order; (2) her probation violation hearing was not conducted before a neutral and detached hearing officer; (3) there was insufficient evidence that appellant willfully failed to appear at 8:30 a.m. on November 19, even if such an appearance was a required condition of probation; (4) Judge Broadman violated appellant's due process rights when he revoked her probation without having first given her written notice of the claimed violation of probation; (5) even if there was a probation violation, Judge Broadman abused his discretion in sentencing appellant to state prison rather than reinstating probation.[3]

For reasons we detail, *post*, we have concluded that appellant's contentions are best resolved by deciding whether or not appellant's failure to appear at 8:30 on November 19, even if such an appearance was a condition of her probation, was conduct which would support Judge Broadman's commitment of appellant to state prison. On the facts of this case we conclude that there was no willful violation of what we will assume was a condition of probation, and that in finding such a violation Judge Broadman abused his discretion.

At the time appellant was released to attempt to enter a drug treatment program, Judge Broadman stated:

---

[3]The first four of these five arguments have been presented by appellant in her brief under the heading "Appellant Was Deprived of Procedural Due Process." These first four arguments therefore correspond to appellant's contention "3" appearing in the paragraph immediately preceding part I of this opinion.

"I'm going to, over the District Attorney's objection, I'm going to order you released. If you're not back in this courtroom at 8:30 on Monday morning with a full report as to what your status is with the Third Floor [a drug treatment program], if you're not back in this courtroom at 8:30, you're going to go to prison. I'm modifying the terms and conditions of probation to release you now. If you're not back in this courtroom at 8:30 and if your car—you might want to camp out here.

"THE DEFENDANT: I'll walk if I have to. I'll be here.

"THE COURT: You'll be here at 8:30.

"THE DEFENDANT: Yes. What's the date on Monday, the 19th."

At her probation violation hearing, appellant unsuccessfully objected to the lack of written notice of the alleged violation (see *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 488-489 [33 L.Ed.2d 484,498-499, 92 S.Ct. 2593] and *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 782 [36 L.Ed.2d 656, 661-662, 93 S.Ct. 1756]), and unsuccessfully contended that appearance at 8:30 a.m. on November 19 was not in fact a condition of probation. And to provide an explanation for her tardiness, appellant gave the following sworn testimony:

"Q Miss. Zaring, can you explain how it is that you were late to court on that particular day?

"A First of all, when I was released I did comply with all of the court orders that I was supposed to do. I made my appointments at Third Floor. I was supposed to be there at 11:00 o'clock Monday morning after I left here from court. I had—I didn't use any kind of drugs. I did everything I was supposed to do.

"On Sunday night my mother-in-law had her mother come over to babysit the kids for us the next morning so that she could bring me to court. And I thought that I had a ride to court for sure.

"The next morning she wasn't feeling well, so my mother-in-law didn't want to leave the kids with her. So she had to wait until she took them to school before she could bring me, and they couldn't be in school until 8:00. And I was here at eight minutes before 9:00. Still but there was—there was no other way that I could come unless I hitchhiked or walked. And I would have been much later then. But this is the first time that I've ever made any progress at all trying to do things right."

Neither Judge Broadman nor the People had any questions.

After further discussion as to whether or not the conduct was a violation of probation, Judge Broadman stated:

"In this matter it appears to me that you violated your probation either in one or two or both instances. Number one, it was either implicit or explicit by the reading—by releasing you at that time that you were to be in court on time, and that was a condition of your probation. However, even if you didn't interpret that to be a condition of your probation, it's clear that you were to obey all laws. It's also clear that my order was a valid order. And that you violated that order. And you violated that order willfully. And, therefore, I find that you are in violation of your probation." The court then set the matter for sentencing.

At the time of sentencing on November 29, 1990, Judge Broadman expressed what we interpret as the court's conclusion as to the underlying facts supporting its probation revocation.

"Miss Zaring I gave a break to, substantial break. And I thought that she—I believed her in the sense that she was finally going to get her life together. I think the People, the lawyer for the People even thought she was going to get her life together.

"And I gave her a break and said even though I was supposed to find unusual circumstances, extraordinary, or whatever those words are, to give her probation, and I found those in this case because we all kind of had a glow of hope for Miss Zaring to get off the drug, prostitution, petty theft strain of her life.

"But Miss Zaring in my viewpoint had never learned act for consequence. And so I told Miss Zaring in a long speech that she had to be here at 8:30, and the most important thing in her life was to be here at 8:30, and if she wasn't here at 8:30 she was going to go to prison. And I told her she should camp out here if she thought she was going to be late. Then she said, 'Yes, I will. I understand. I'll be here.' Then she came in and she said, well, she took her children to school.

"Understand I let her out early, so had she not been there I don't know how the children would have gotten to school or if they would have gotten to school. She chose to take her children to school and willfully violated that directive and agreement that we had. And so I found her in violation of her probation."

Thus we conclude that Judge Broadman accepted appellant's statement as to why she was late and found that despite her explanation her conduct constituted a willful violation of her probation.

Penal Code section 1203.2, subdivision (a) provides in pertinent part:

". . . [T]he court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses. . . ."

In *People* v. *Buford* (1974) 42 Cal.App.3d 975 [117 Cal.Rptr. 333], the court stated:

"Revocation rests in the sound discretion of the court. Although that discretion is very broad, the court may not act arbitrarily or capriciously; its determination must be based upon the facts before it." (*People* v. *Buford*, *supra*, 42 Cal.App.3d at p. 985.)

We have determined that the appropriate way to address this issue is to accept appellant's explanation of her conduct as true as Judge Broadman apparently also did and assume that the court-ordered appearance at 8:30 was, for the sake of argument, a condition of probation. Operating under the foregoing assumption, we conclude that Judge Broadman abused his discretion.

" 'Judicial discretion is that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or the demand of equity and justice. [Citation.] The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason.' [Citations.] A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review. [Citations.] 'Further, to be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.]' " (*People* v. *Preyer* (1985) 164 Cal.App.3d 568, 573-574 [210 Cal.Rptr. 807].)

Certainly, it cannot reasonably be concluded that Judge Broadman expected the appellant to "camp" outside the courtroom until 8:30 in the

morning. Neither can it reasonably be concluded that had appellant had an accident or mechanical failure of her vehicle that such conduct would not be excusable. ■ In other words, the discretion that the trial court is empowered to use is predicated upon reason and law but is primarily directed to the necessary end of justice. As judges, such discretion requires the application of sound judgment that takes into consideration that life is not always predictable and that things do not always go according to plan.

All these factors together are part of the trial judge's weighing process—with a balanced fair judgment the desired result.

The evidence presented by the appellant is uncontroverted. We therefore conclude that the appellant was confronted with a last minute unforeseen circumstance as well as a parental responsibility common to virtually every family. Nothing in the record supports the conclusion that her conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court. However, as a result of last minute circumstances, the appellant was approximately 22 minutes late to court, having driven some 35 miles from her home to the courtroom.[4] Collectively, we cannot in good conscience find the evidence supports the conclusion that the conduct of appellant, even assuming the order was a probationary condition, constituted a willful violation of that condition.[5] Judge Broadman's action in revoking appellant's probation under the circumstances presented herein and for the reasons stated by Judge Broadman are an arbitrary and capricious use of the court's power and constituted an abuse of discretion. As a consequence of that action appellant was committed to the Department of Corrections for two years. For the reasons stated, the order revoking probation was erroneous. In light of our resolution of this issue, we need not address appellant's remaining contentions regarding her sentence.

Appellant's conviction is affirmed. The sentence is reversed. We remand the case to the superior court for resentencing in accordance with the views expressed herein.

Best, P. J., and Stone (W. A.), J., concurred.

---

[4] We take judicial notice that the distance from Porterville, California to Visalia, California is approximately 35 miles.

[5] Facts supporting a revocation of probation must be demonstrated by a preponderance of the evidence. (*People* v. *Rodriguez* (1990) 51 Cal.3d 437, 447 [272 Cal.Rptr. 613, 795 P.2d 783].)