[No. B192308. Second Dist., Div. Three. Sept. 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR RODRIGUEZ GALVAN, Defendant and Appellant.

**COUNSEL**

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Defendant and appellant, Hector Rodriguez Galvan, appeals from the revocation of the probation stemming from his conviction for burglary and possession of a controlled substance (Pen. Code, § 459; Health & Saf. Code, § 11350).[1] Sentenced to state prison for three years, Galvan contends the trial court abused its discretion when it revoked his probation.

The trial court held Galvan had violated the terms and conditions of his probation because he failed to report to the probation department both after his release from custody and after his subsequent reentry into the United States. We conclude there was insufficient evidence to sustain revocation on the latter ground, and that the former ground did not constitute a willful probation violation because the federal government deported Galvan to Mexico immediately upon his release from county jail. In these circumstances, the trial court's revocation of probation was an abuse of discretion.

The judgment is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2003, Galvan pled guilty (in L.A. County Super. Ct. case No. PA043137) to possessing cocaine in violation of Health and Safety Code section 11350, subdivision (a). Entry of judgment was deferred and Galvan was placed on probation for three years.

On August 22, 2005, Galvan pled no contest (in L.A. County Super. Ct. case No. PA052333) to burglary. On September 6, 2005, a three-year prison term was imposed but not executed. Galvan was placed on probation under the condition that he serve 365 days in county jail. Also on September 6, 2005, Galvan admitted he had violated probation in his cocaine possession case. The trial court revoked and then reinstated probation, with the condition Galvan serve 365 days in county jail, this sentence to run concurrently with the burglary sentence.

One of the probation conditions in the drug case stated: "Within 24 hours of your release, *you are to contact* the community assessment service center in Tarzana and the probation officer assigned to that center." (Italics added.)

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

The probation conditions in the burglary case included the following: *"He is to report* to the probation officer upon his release from custody within 24 hours. [¶] If he does leave the country, he is not to reenter the United States illegally. If he does return, *he is to report to* the probation officer within 24 hours and present documentation which proves that he is in the United States legally." (Italics added.)

On September 6, 2005, Probation Officer Gabriella Escandon was assigned to supervise Galvan's probation. Galvan failed to appear for a probation violation hearing set for December 27, 2005, and a bench warrant was issued. On April 12, 2006, Galvan was arrested in the United States and taken into custody. There is no evidence in the record as to when Galvan reentered the United States.

On June 12, 2006, a formal probation violation hearing was held in both the cocaine possession case and the burglary case. Probation Officer Escandon testified that, according to Immigration and Naturalization Service[2] computer records, Galvan had been deported to Mexico on November 1, 2005. She also testified she was never in contact with Galvan while serving as his probation officer, and that she was unaware he had returned to the United States until she was subpoenaed to appear at the probation violation hearing. Escandon could find no record of Galvan having reported to the probation department after his release from county jail.

The trial court found Galvan in violation and revoked his probation in both cases. The trial court executed Galvan's three-year sentence in the burglary case and sentenced him to state prison for two years in the drug case, with the sentences to run concurrently.

## CONTENTION

Galvan contends the trial court improperly revoked his probation.

## DISCUSSION

1. *Legal principles.*

A court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . ." (§ 1203.2, subd. (a).) "As the language of

---

[2] Although Escandon referred to the agency as the "INS," it is now called United States Citizenship and Immigration Services (USCIS).

section 1203.2 would suggest, the determination whether to . . . revoke probation is largely discretionary." (*In re Coughlin* (1976) 16 Cal.3d 52, 56 [127 Cal.Rptr. 337, 545 P.2d 249].) "[T]he facts supporting revocation of probation may be proven by a preponderance of the evidence." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 439 [272 Cal.Rptr. 613, 795 P.2d 783].) However, the evidence must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation. (See *People v. Zaring* (1992) 8 Cal.App.4th 362, 378–379 [10 Cal.Rptr.2d 263] [trial court abused its discretion by revoking probation for a tardy court appearance caused by circumstances beyond probationer's control].)

2. *Proceedings below.*

The parties disagree about the trial court's reason for revoking probation. Galvan asserts it was because he failed to report to the probation department within 24 hours *of reentering the United States* in the aftermath of his deportation. The People assert it was because Galvan failed to report to the probation department within 24 hours *of his release from county jail.* It appears, however, that the trial court revoked probation for both reasons.

At the formal probation revocation hearing, the trial court pointed out Galvan had been ordered to report *both* upon his release from custody and upon any reentry, and then revoked his probation: "I orally ordered the defendant not to enter the United States illegally. If he does return, he is to report to the probation officer within 24 hours to present documentation that he is in the United States legally. [¶] I also ordered the defendant to report to the probation officer upon his release from custody within 24 hours. [¶] Under the standard that I have before me, that is, by a preponderance of the evidence, I find defendant to be in violation of probation as to both cases, PA052333, for failure to report to the probation officer and case, PA043137, also on the basis of failure to report to the probation officer. As to each case probation is revoked." Hence, it appears the trial court revoked Galvan's probation *both* because he failed to report within 24 hours of his release from county jail, *and* because he subsequently failed to report within 24 hours of his reentry into the United States.

3. *The trial court abused its discretion by revoking Galvan's probation.*

As for Galvan's having failed to report to probation within 24 hours of reentry to the United States, the record contains no evidence showing how

long Galvan had been back in the United States before he was arrested on April 12, 2006. Hence, there was no evidentiary basis for revoking probation on that ground. (See *People v. Balkin* (2006) 145 Cal.App.4th 487, 492–493 [51 Cal.Rptr.3d 687] [defendant was improperly convicted of failing to register as sex offender within five days of entering Los Angeles because "there was no evidence to establish when defendant . . . moved into the city or county—it could have been one day prior to his arrest or more than five days"].)

■ As for Galvan's having failed to report to probation within 24 hours of his release from custody, he argues it was impossible to do so because the federal government immediately deported him and, therefore, his failure to report was not willful. We agree. As the court in *People v. Zaring, supra,* 8 Cal.App.4th 362, reasoned: A trial court abuses its discretion by revoking probation if the probationer did not willfully violate the terms and conditions of probation.

In *Zaring,* the trial court had ordered the defendant to appear in court the following day at 8:30 a.m. The next day, the defendant was 22 minutes late. At her probation revocation hearing, the defendant explained she had arranged for a ride to court (she lived 35 miles away), but that the ride fell through at the last minute due to a childcare problem. *Zaring* held the trial court abused its discretion by revoking probation because the defendant's violation had not been willful: "Certainly, it cannot reasonably be concluded that Judge Broadman expected the appellant to 'camp' outside the courtroom until 8:30 in the morning. Neither can it reasonably be concluded that had appellant had an accident or mechanical failure of her vehicle that such conduct would not be excusable. In other words, the discretion that the trial court is empowered to use is predicated upon reason and law but is primarily directed to the necessary end of justice. . . . [¶] . . . [¶] . . . [A]ppellant was confronted with a last minute unforeseen circumstance as well as a parental responsibility common to virtually every family. Nothing in the record supports the conclusion that her conduct was the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court. . . . [W]e cannot in good conscience find the evidence supports the conclusion that the conduct of appellant, even assuming the order was a probationary condition, constituted a willful violation of that condition." (*People v. Zaring, supra,* 8 Cal.App.4th at pp. 378–379, fns. omitted.)

By the same reasoning, we conclude Galvan's immediate deportation to Mexico following his release from county jail demonstrates that his failure to report within 24 hours was not willful.

"The courts have long recognized that the decision whether to grant probation to a deportable alien presents special issues. In *People v. Sanchez* (1987) 190 Cal.App.3d 224 [235 Cal.Rptr. 264], the Court of Appeal held that a defendant's status as an illegal alien is highly relevant to the issue of whether to grant probation because it bears directly on whether the defendant can comply with the terms of probation. (*Id.* at pp. 230–231.) The appellate court observed that '[w]hen dealing with an illegal . . . alien, the trial judge must assume, barring presentation of . . . credible evidence to the contrary, a defendant will be deported upon completion of any term of incarceration imposed,' and that deportation is especially likely 'where a defendant is convicted of possession or sale of a controlled substance.' (*Id.* at p. 230; see also *People v. Cisneros* (2000) 84 Cal.App.4th 352, 358 [100 Cal.Rptr.2d 784] [defendant's illegal alien status is an appropriate factor to consider in deciding whether to offer drug treatment under a discretionary program].) In this case, the strong probability that defendant will be deported before he can satisfy the drug treatment condition of his probation would entirely frustrate the objectives of Proposition 36.[3]" (*People v. Espinoza* (2003) 107 Cal.App.4th 1069, 1074–1075 [132 Cal.Rptr.2d 670].)

*Espinoza* held the trial court did not err by denying Proposition 36 probation to a defendant who was an illegal alien subject to deportation: "California authorities have no effective means to evaluate or certify treatment programs based in other jurisdictions. Moreover, no California court can lawfully compel a noncitizen to attend a drug treatment program in his country of origin. Our probation departments cannot force foreign treatment providers to make the reports and notifications required by the statute. (See § 1210.1, subd. (c).) Our courts lack jurisdiction to enforce their probation conditions or to remand the defendant into custody on foreign soil." (*People v. Espinoza, supra,* 107 Cal.App.4th at p. 1076.) As the court in *Sanchez*

---

[3] Proposition 36 governs sentencing for nonviolent drug possession offenses: "On November 7, 2000, . . . California voters passed Proposition 36, the Substance Abuse and Crime Prevention Act of 2000. Proposition 36 amended state law to require that certain adult drug offenders receive probation, conditioned on participation in and completion of an appropriate drug treatment program, instead of receiving a prison term or probation without drug treatment. (Pen. Code, § 1210.1.)" (*People v. Floyd* (2003) 31 Cal.4th 179, 183 [1 Cal.Rptr.3d 885, 72 P.3d 820].)

concluded: *"Obviously, a convicted illegal alien felon, upon deportation, would be unable to comply with any terms and conditions of probation beyond the serving of any period of local incarceration imposed." (People v. Sanchez, supra,* 190 Cal.App.3d at p. 231, italics added.)[4]

■ In his two probation cases, Galvan had been told to *"report to* the probation office" and to *"contact* the community assessment service center in Tarzana and the probation officer assigned to that center" within 24 hours of his release from custody. We believe a reasonable person in Galvan's position would have understood these instructions to require a personal appearance before the probation officer.[5] This conclusion is strengthened by the fact Galvan also had been ordered, should he subsequently reenter the United States, to "report to the probation officer . . . and present documentation . . . ." Galvan's deportation obviously prevented him from reporting in person. We also believe a reasonable person in Galvan's position would have assumed that, in these circumstances, the 24-hour reporting requirement would be excused. Hence, in the words of *Zaring,* Galvan's failure to report was not "the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court," nor did it "constitute[] a willful violation of [his probation] condition." (*People v. Zaring, supra,* 8 Cal.App.4th at p. 379.)

The trial court's revocation of Galvan's probation was an abuse of discretion because his failure to comply with the reporting condition had not been willful.

---

[4] The Attorney General relies on *People v. Campos* (1988) 198 Cal.App.3d 917 [244 Cal.Rptr. 75], which cited *Sanchez* yet came to a conclusion antagonistic to Galvan's argument. *Campos* held: "[T]he trial court was not required to consider as a factor in mitigation that appellant had been deported when basing the revocation of probation partly on the fact that appellant had not reported to the probation department. *A defendant who is deported while on probation may be found in violation of that probation for failure to report to the probation department although his deportation makes it impossible for the defendant to fulfill this condition of his probation."* (*Id.* at p. 923, italics added.) However, *Campos* was decided prior to *Zaring* and does not explain how a failure to report in the deportation situation could be willful.

[5] It does not appear, nor does the Attorney General assert, that Galvan was informed he could comply with the reporting requirements in any way other than by showing up in person.

## DISPOSITION

The judgment is reversed.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 19, 2007.