Filed 4/22/16  P. v. Quiroz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063105 |
| v. | (Super.Ct.No. RPR1401571) |
| DANIEL ANTHONY QUIROZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Judith M. Fouladi, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Daniel Anthony Quiroz appeals from the trial court's order finding him in violation of his parole and sentencing him to 120 days in county jail. On appeal, defendant contends the trial court abused its discretion in finding he violated the court's order to appear because there was insufficient evidence to show the failure to appear was willful.[1] We reject defendant's contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was on parole following his conviction for first degree burglary.

On January 12, 2015, defendant's parole agent filed a parole violation report alleging that defendant was a "habitual absconder," had "continue[d] to fail to comply with parole supervision," and had "created a chronic pattern of parole violations," "indicative to criminal behavior." Defendant's parole agent recommended that defendant continue on parole with remedial sanctions and serve a custody period of 135 days.

On January 15, 2015, at a parole revocation hearing, defendant admitted that he had violated parole by absconding supervision. When asked why he failed to report, defendant stated: "To be honest with you, Your Honor, I had a lot going on at the moment. The woman I ended up marrying, I don't know, we had a falling out, and it just kind of messed with my head, and I just completely put it on the back burner."

---

[1] In the alternative, defendant claims if this court finds his failure to appear was not willful, a remand is necessary to allow the trial court to determine whether his poor performance in a rehabilitation program violated any sufficiently clear and enforceable court order. Because we find defendant's failure to appear as ordered by the court was willful, we need not reach this alternative argument.

Defendant was also expecting a child on February 15, 2015. Defendant's counsel explained defendant's circumstances and requested "some sort of a suspended sentence" so he could be present for the birth of his child. Defense counsel also indicated to the court that he had explained to defendant that "in the event that the Court went along with this sort of disposition, but there were no guarantees, but in the event the Court went along with this sort of disposition, that there could be a suspended sentence hanging over his head, and that if he did not comply, that there is a possibility that not only would that suspended sentence be imposed, but there could be an additional violation for violation of a court order as well, and [defendant] indicated that he did understand that and was willing to accept those terms should the Court find that necessary to impose."

The court reinstated defendant's parole, ordered defendant to serve 60 days in county jail, and continued sentencing to February 19, 2015. The court explained: "[Defendant will] admit that he violated his parole by absconding supervision. He'll be reinstated to parole, and we'll just continue sentencing to 2-19. If he returns on 2-19, he'll receive—we'll have a release date of 2-4. If he returns to this court on 2-19 and if you have a very good progress report from parole, then you won't do any more time. However, if you don't show up and, and/or if your report is a poor one, then you'll be looking at doing the balance of the full 180 days, sir." Defendant replied, "I understand." Defendant also acknowledged that he would be facing an additional 300 days in custody if he failed to follow the court's directives. The court also ordered defendant to report to parole "at the first opportunity upon [his] release . . . and certainly no later than 24 hours

3

thereafter." The court further directed parole to enroll defendant in the "Day Reporting Center," and if enrolled, ordered defendant to cooperate with parole and the program. The court modified defendant's conditions of supervision to reflect that he was required to return to court on February 19, 2015.

On February 19, 2015, defendant failed to appear at his ordered sentencing hearing.

On March 16, 2015, another sentencing hearing was held. At that time, defendant called two witnesses—a representative from the ABC Recovery Center (ABC), a rehabilitation program defendant attended, and defendant's parole agent. Defendant's parole agent testified that defendant had reported to parole as ordered following his release from custody on February 4 or 5, 2015. Defendant had reported again on February 17, 2015, and informed the agent on duty that he needed to get into a drug program. That parole agent then contacted the Social Treatment Opportunity Program (STOP), an organization that identifies appropriate programs, and STOP referred defendant to the ABC program in Indio. Defendant was then picked up at the Riverside parole office by a driver from STOP and transported to the ABC program.

The ABC representative explained that ABC is a drug and alcohol program exclusively for probationers and parolees. When parolees arrive, they are subject to a 14-day "blackout" or "lockout" period. During that period, the parolees are not allowed to talk to friends or family, but can address medical or legal issues. The representative explained that the program usually takes the client's word for when his or her court date

4

is scheduled.  If there is a court date, ABC works with STOP to arrange transportation. ABC normally conducts an intake, and if a client states he has a court date that would be noted on the intake notes.  ABC will not necessarily speak with a parole agent about the parolee's future court dates.  Parolees usually inform ABC about a court date because they are "usually stressed out about it."  At the initial intake, the agent does an assessment known as BSAP, and clients are asked if they are awaiting charges or sentencing.  This initial assessment is not typically done when the client first reports, but sometime during the client's first week.  The ABC representative noted that it was possible that this assessment was not completed until after February 19, 2015.  The ABC progress report notes indicate the initial assessment was conducted on February 23, 2015. Defendant arrived at ABC on February 17, 2015, after being referred by the STOP program.  Defendant never informed anybody at ABC he had an upcoming court appearance on February 19, 2015.

Defendant was in good standing with the ABC program through February 19, 2015.  However, defendant eventually had behavioral problems at ABC.  ABC progress report notes dated February 20, 2015, state that defendant was "reluctant to process in group settings" or one-on-one sessions; that defendant was disrespectful towards staff; and that defendant said he was not going to process anything and he was just there because parole had sent him there.  Progress notes dated February 23, 2015 state that while conducting the initial assessment at 3:00 p.m. and 6:00 p.m. defendant became angry and disrespectful and stormed out of the room, swearing and saying " 'fuck this

iam [*sic*] not doing this its [*sic*] all bullshit.' " At the 3:00 p.m. assessment, defendant also stated "he was not going to open up here and process anything." Defendant was eventually discharged from the ABC program on February 27, 2015, for noncompliance with rules.

Defense counsel argued that up until February 19 defendant was complying with the conditions of his parole; that defendant did not willfully fail to appear on the February 19 court date because he was under the 14-day "lockdown" period and neither his parole agent nor ABC was aware of defendant's court date; and that his parole should not be revoked. The trial court disagreed, and found defendant had not complied with its orders on January 15, 2015, and imposed the 120 days that had previously been suspended. The court explained that defendant had specifically been ordered to return to court on February 19 and failed to do so. The court also indicated that the progress notes from ABC showed that within a couple of days of starting the program, defendant had already failed to fully participate and comply with the program.

II

DISCUSSION

Defendant argues that the trial court abused its discretion in finding he violated the court's order to appear on February 19, 2015, because there was insufficient evidence the failure to appear was willful.[2] We disagree.

---

[2] The People point out that the issue may be moot because defendant would have served his 120-day sentence by the time his appeal is decided. However, as noted by the People, "[w]e have discretion to decide a case that, although moot, poses an issue of

*[footnote continued on next page]*

6

"In 2011, the Legislature enacted realignment legislation which amended a 'broad array of statutes concerning where a defendant will serve his or her sentence and how a defendant is to be supervised on parole.' [Citation.]" (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 650 (*Williams*).) "In 2012, as part of the realignment system, the Legislature amended [Penal Code][3] section 1203.2 (which previously dealt solely with the revocation of probation) to apply to the revocation of supervision (§ 1203.2, subds. (a), (f)(3)), thereby establishing a uniform process for revocation of parole, probation, and postrelease supervision of most felons." (*Williams*, *supra*, at pp. 650-651, italics omitted.) "Consequently, under current section 1203.2, the court has authority to

---

*[footnote continued from previous page]*
*[footnote continued from previous page]*
broad public interest that is likely to recur." (*People v. Osorio* (2015) 235 Cal.App.4th 1408, 1411, citing *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1086.) This is such a case.

We recognize that in *Spencer v. Kemna* (1998) 523 U.S. 1, 18, the Supreme Court refused to reverse the district court's determination that a defendant's habeas corpus petition, challenging his parole revocation, was moot because he had completed his term of imprisonment underlying the parole revocation, and it was therefore not certain that he would suffer any injury due to any error on the parole revocation. Under California's penal system, any future interactions between the defendant and the justice system will likely bring to light the defendant's parole revocation. Should the defendant suffer a further criminal conviction, the parole revocation may be used as part of his sentencing determination. The parole revocation also may be used against defendant in other noncriminal arenas, such as employment decisions or child custody matters. In short, we cannot say with reasonable certainty that defendant's release from parole moots his claim that the trial court erred in finding his failure to appear was willful.

A parole revocation order is a postjudgment order affecting the substantial rights of the party, and is therefore appealable. (Pen. Code, § 1237, subd. (b).) The issue defendant raises on appeal is a matter of broad public interest that is likely to recur. Therefore, we exercise our discretion to consider the merits of this appeal.

[3] All future statutory references are to the Penal Code unless otherwise stated.

revoke the supervision of a person on grounds specified in the statute. (§ 1203.2, subds. (a), (b).) Previously the Board of Parole Hearings conducted parole probable cause and revocation hearings. [Citation.]" (*Williams*, *supra*, at p. 651, italics omitted.) "In enacting the realignment legislation, the Legislature declared its intent that the statutory amendments that established section 1203.2's uniform procedure 'simultaneously incorporate the procedural due process protections held to apply to probation revocation procedures' under *Morrissey* [*v. Brewer* (1972)] 408 U.S. [472,] 471 and *People v. Vickers* (1972) 8 Cal.3d 451, 459, [] which applied the *Morrissey* parole revocation protections to probation revocation[] and their progeny. (Stats. 2012, ch. 43, § 2, subd. (b).)" (*Williams*, *supra*, at p. 651.)

"Section 3000.08, govern[s] parole supervision [and] contains the following relevant provisions. If a parole agent or peace officer has probable cause to believe a parolee is violating parole, the agent or officer may, without warrant, 'arrest the person *and bring him or her before the court*, or the court may, in its discretion, issue a warrant for that person's arrest[.]' (*Id*. subd. (c), italics added.) If the supervising parole agency finds 'good cause' that the parolee violated the law or a parole condition, the agency may impose additional conditions of supervision and '*immediate*, structured, and intermediate sanctions . . . , including flash incarceration[.]' (*Id*., subd. (d), italics added.) . . . 'If the supervising parole agency has determined . . . that intermediate sanctions . . . are not appropriate, the supervising parole agency shall, pursuant to [s]ection 1203.2, *petition* [*the court*] to revoke parole.' (*Id*., subd. (f), [italics added].) If the court finds the

8

parolee has violated the conditions of parole, it may (1) return the person to parole supervision with modifications of conditions, if appropriate, (2) revoke parole and order the person to confinement in county jail, or (3) refer the person to reentry court or an evidence-based program.  (*Ibid*.)"  (*Williams*, *supra*, 230 Cal.App.4th at pp. 651-652.)

Section 1203.2, subdivision (a), governs the procedure for revocation of supervision, including parole.  "If a probation or parole officer or a peace officer 'has probable cause to believe that the supervised person is violating any term or condition of his or her supervision, the officer may, without warrant or other process, . . . rearrest the supervised person and bring him or her before the court,' or the court may issue a rearrest warrant.  (*Ibid.*, italics added.)  The court may revoke the supervision of the person 'if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of his or her supervision . . . [.]'  (*Ibid.*, italics added.)  The court may also revoke supervision upon [the petition of the parole office] or the district attorney (*id*., subd. (b)(1)), based on the . . . parole officer's written report (*id*., subd. (b)(2)).  Nothing in section 1203.2 'affects the authority of the supervising agency to impose intermediate sanctions . . . .'  (*Id*., subd. (g), italics added.)"  (*Williams*, *supra*, 230 Cal.App.4th at pp. 652-653, italics omitted.)

Collectively, sections 3000.08 and 1203.2 are part of an overall statutory scheme governing parole supervision and revocation.  Sections 3000.08 and 1203.2 establish a general framework for parole eligibility, the enforcement of parole terms, procedures for conducting hearings, and procedures for petitioning a court to revoke parole.  For either

9

type of violation, the standard of proof sufficient to give the court " 'reason to believe' " that a probationer or parolee has violated the conditions of his or her probation or parole is preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 440-441 (*Rodriguez*); see § 3044, subd. (a)(5).)

In a probation revocation hearing, a trial court has broad discretion to determine whether to revoke probation. (*Rodriguez, supra,* 51 Cal.3d at p. 443; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849.) "A trial court abuses its discretion by revoking probation if the probationer did not willfully violate the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 983.) A trial court's finding of a probation violation will be upheld when it is supported by substantial evidence. (*People v. Kurey*, *supra*, 88 Cal.App.4th at p. 848.)

Because, as noted, parole revocation is indistinguishable from probation revocation in terms of due process, defendant urges us to apply here the standard applicable to a probation violation—namely, that a parole violation must be willful. And, he argues, the trial court's finding that he violated a condition of his parole by failing to appear on February 19 was unsupported by substantial evidence because there was no evidence of willful conduct. Assuming that a willful violation is required, we conclude there was substantial evidence that defendant's failure to appear as ordered on February 19 was willful.

In criminal law, willfulness requires " 'simply a purpose or willingness to commit the act . . . ,' without regard to motive, intent to injure, or knowledge of the act's

10

prohibited character. [Citation.] The terms imply that the person knows what he is doing, intends to do what he is doing, and is a free agent. [Citation.] Stated another way, the term 'willful' requires only that the prohibited act occur intentionally. [Citations.]" (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1438.) Appellate courts have reversed violation findings when the conduct at issue does not demonstrate irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court. (E.g., *People v. Galvan*, *supra*, 155 Cal.App.4th at p. 984 [probation violation finding reversed when the defendant did not report to probation within 24 hours as required because he had been deported after release from county jail, could assume requirement had been waived and thus did not willfully violate probation condition]; *People v. Zaring* (1992) 8 Cal.App.4th 362, 379 [probation violation finding reversed when defendant appeared 22 minutes late for a hearing in violation of a court order due to a change in circumstances that required her to take her children to school before going to court and thus violation was not willful].)

In this case, defendant knew he had to appear at the February 19 sentencing hearing. Defendant, however, failed to comply with that order. Defendant does not dispute he did not understand the order or claim that such an order was not made. Rather, he contends his "failure to appear was not willful because he was in a 14-day lockdown period at the ABC program and was never told that he could leave the program to attend court during that lockdown period." We find defendant's claim unpersuasive. The ABC program representative specifically testified that the "blackout" period did not apply to

11

any medical or legal issues. The representative also explained that the program usually takes the client's word for when his or her court date is scheduled and even coordinates transportation to and from court. Defendant never asked anyone if he could leave for his court date, and it was incumbent upon him to notify ABC of his court date. Defendant appears to shift the blame to others rather than take responsibility for his own actions in failing to appear at the February 19 sentencing hearing as ordered by the trial court. Defendant's documented history of absconding and failing to report to parole further belies any claim of a non-willful violation.

Contrary to his characterization, defendant did not face unforeseen circumstances that rendered him incapable of complying with the parole condition. (See *People v. Galvan*, *supra*, 155 Cal.App.4th at pp. 983-984 [the finding that defendant willfully failed to timely report to probation was unsupported because defendant had been immediately deported upon his release, rendering it impossible for him to comply with that condition]; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 ["Where a probationer is unable to comply with a probation condition because of circumstances beyond his or her control and defendant's conduct was not contumacious, revoking probation and imposing a prison term are reversible error"]; *People v. Zaring*, *supra*, 8 Cal.App.4th at pp. 378-379 [appellate court held the trial court abused its discretion by revoking probation because nothing in the record suggested the defendant's failure to appear was the result of irresponsibility, contumacious behavior, or disrespect for the orders and expectations of the court].) Rather, it was reasonably foreseeable that ABC

would have allowed defendant to attend his court hearing if defendant would have notified ABC of his court date, despite the "blackout" period. Yet he took no steps to notify ABC of his court date. He could have simply notified ABC of his February 19 court hearing, and ABC would have arranged transportation for him to attend the hearing. Instead, he did nothing.

Accordingly, we find defendant's reliance on *People v. Zaring*, *supra*, 8 Cal.App.4th 362, *People v. Galvan*, *supra*, 155 Cal.App.4th 978 and *People v. Cervantes*, *supra*, 175 Cal.App.4th 291 unavailing. Those cases address the concept of "willfulness" in circumstances where it was physically impossible for a probationer to comply with the conditions of probation due to circumstances beyond the probationer's control. Unlike in those cases, here defendant's failure to appear was the result of irresponsibility, contumacious behavior, or disrespect for the orders and expectations of the court. Moreover, his appearance at the February 19 hearing was well within his control. (Compare *People v. Galvan*, *supra*, 155 Cal.App.4th at pp. 980, 983-984 [it was impossible for the defendant to personally report to the probation officer within 24 hours of his release from jail, because he had been deported; therefore his failure to report was not willful.]; *People v. Zaring*, *supra*, 8 Cal.App.4th at pp. 378-379 [the defendant's probation was revoked after she was 22 minutes late to a court appearance even though she explained that she had arranged for a ride to court, but the ride fell through at the last minute due to a childcare problem]; *People v. Cervantes*, *supra*, 175 Cal.App.4th at

13

p. 293 [the defendant was not in violation of probation where he was unable to appear for a hearing because he was in the custody of immigration authorities].)

Under these circumstances, we must conclude that substantial evidence supported the trial court's finding. As the court in *People v. Sorden* (2005) 36 Cal.4th 65, 72 observed when considering whether the defendant's failure to register as a sex offender was willful, "life is difficult for everyone," and those who have "legally mandated" obligations must "learn to cope by taking the necessary measures to remind themselves to discharge" their duties.

## III

## DISPOSITION

The order finding defendant in violation of his parole is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.

We concur:


CODRINGTON _____
J.


SLOUGH _____
J.