Filed 11/18/13  P. v. Ledee CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE LEDEE,<br><br>    Defendant and Appellant. | H038939<br>(Santa Cruz County<br>Super. Ct. Nos. F19597, F19977) |

Defendant Lawrence Ledee pleaded guilty in case No. F19597 (forgery case) to a count of forgery (Pen. Code, § 470, subd. (d))[1] and admitted service of three prior prison terms (§ 667.5, subd. (b)).  In case No. F19977 (domestic violence case), he pleaded no contest to a count of corporal injury to a spouse (§ 273.5, subd. (a)) and admitted allegations of a prior serious felony conviction (§ 667, subd. (a)(1)) and service of a prior prison term (§ 667.5, subd. (b)).  The trial court imposed and suspended execution of sentence in both cases and placed defendant on felony probation.  In July 2012, the trial court found defendant in violation of his probation, revoked probation, and sentenced him to a term of 14 years in prison.

On appeal, defendant argues that the trial court abused its discretion in revoking his probation.  He further contends that the trial court erred in imposing increased restitution fines after it revoked his probation and sentenced him to prison.  We find no error in the revocation of probation but conclude that the original restitution fines

---

[1] All further unspecified statutory references are to the Penal Code.

imposed by the trial court survived the revocation of probation. We therefore modify the judgments by striking the increased restitution fines, and as modified, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of defendant's offenses are not relevant to the issues raised on appeal. It is sufficient to state that defendant entered into a negotiated plea in two separate cases. In the forgery case, defendant pleaded guilty to a count of forgery (§ 470, subd. (d)) and service of three prior prison terms (§ 667.5, subd. (b)). In the domestic violence case, defendant pleaded no contest to a count of corporal injury to a spouse (§ 273.5, subd. (a)) and admitted allegations of a prior serious felony conviction (§ 667, subd. (a)) and service of a prior prison term (§ 667.5, subd. (b)). The trial court sentenced defendant to a total of 14 years in prison for the two cases on January 11, 2011, suspended execution of the sentence, and placed defendant on probation for a period of eight years. In the forgery case, the trial court imposed a $200 restitution fine under section 1202.4, subdivision (b)(1) and a $200 probation revocation restitution fine under section 1202.44 that was stayed pending successful completion of probation. In the domestic violence case, the trial court imposed a $400 restitution fine under section 1202.4, subdivision (b)(1) and a $400 probation revocation restitution fine under section 1202.44 that was also stayed pending successful completion of probation. As a condition of his probation, defendant was ordered to complete a two-year drug rehabilitation program at Delancey Street.

Defendant started the Delancey Street program in January 2011 but left the program several days later. He initially told his probation officer that the program had asked him to leave. However, program officials asserted that defendant had left of his own will without telling staff about his departure. Delancey Street readmitted defendant, but expelled him shortly after because he was "dishonest" with program staff. In March 2011 defendant admitted he violated his probation by leaving the Delancey Street

2

program.  The court reinstated defendant's probation and ordered him to complete a two-year residential program.  Defendant was accepted into City Team Ministries (City Team), a 12-month program for those with substance abuse problems that can extend beyond 12 months for excelling and committed participants.  As a condition of his probation, defendant was ordered to complete a two-year program at City Team and to "not discontinue [the program] without consent of the probation officer and/or program directors."  Defendant began the City Team program in June 2011.

On May 31, 2012, defendant's probation was summarily revoked as he had been terminated from the City Team program.  After a hearing, the trial court found defendant in violation of his probation and revoked his probation on July 6, 2012.  The trial court then executed the previously suspended sentence of 14 years and imposed restitution fines under section 1202.4 in the amount of $1,200 for the forgery case and $2,800 for the domestic violence case.  The trial court also imposed matching parole revocation restitution fines of $1,200 for the forgery case and $2,800 for the domestic violence case under section 1202.45.

## DISCUSSION

On appeal, defendant argues that the trial court abused its discretion when it revoked his probation.  He further contends that the court erred in imposing restitution fines greater than the amounts that were originally imposed.

### *Revocation of Probation*

Section 1203.2, subdivision (a), authorizes the trial court to revoke probation after proper notice and a hearing "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such

3

offenses." Once a court had determined that a violation of probation has occurred, it must "decide whether under all of the circumstances the violation of probation warrants revocation." (*People v. Avery* (1986) 179 Cal.App.3d 1198, 1204.)

The trial court is vested with broad discretion in determining whether to reinstate probation following revocation of probation (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1315), and the trial court's decision to revoke probation is reviewed for an abuse of discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*); *People v. Downey* (2000) 82 Cal.App.4th 899, 909-910.) " '[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*Rodriguez, supra*, at p. 443.) However, "the facts supporting a revocation of probation must be proven by a preponderance of the evidence." (*Id.* at p. 439.) Also, "the evidence must support a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*People v. Galvan* (2007) 155 Cal.App.4th 978, 982; *People v. Zaring* (1992) 8 Cal.App.4th 362, 378-379.)

One of defendant's probation conditions stated that he was to complete a two-year program at City Team. Defendant was only at City Team for approximately one year. According to testimony by a case manager from City Team, his stay was terminated toward the end of May 2012 due to his violation of the program's rules. Therefore, sufficient evidence supported the conclusion that defendant violated the express probation condition to complete a two-year program at City Team.

Nonetheless, defendant argues that his failure to complete a two-year program at City Team was "unavoidable" because City Team does not offer a two-year program. He therefore contends that the trial court abused its discretion by revoking probation because his violation of the condition that he complete a two-year program at City Team was not

willful. Defendant also maintains that he had graduated from the program by the time he was terminated, and that "he went on to successfully complete what was asked of him."

Although it is true that defendant had completed the minimum requirements to graduate from the program by the time he was asked to leave, it was his behavior during the program that ended his stay at City Team. Defendant asserted at the hearing that he had left the program based on a mutual agreement with the case manager. However, this contradicts the testimony of the case manager from City Team who testified at the revocation hearing about the circumstances of defendant's termination from the program.[2]

The case manager stated that defendant was brought to the case manager's office in late May 2012 to have a discussion about defendant's placement at City Team. During this meeting, defendant was told that he had met the minimum requirements to graduate, but that there was a "lack of effort" on his part. Defendant was then informed that it was unlikely his stay at City Team was going to be extended. At some point during this conversation, defendant admitted that he had been using a facility pass to see his girlfriend. Defendant had acquired this facility pass earlier in the year, after filling out a form indicating that he was going to use the pass to go to school and to assist in his job search. Defendant's use of the facility pass to see his girlfriend was a violation of the

---

[2] Defendant argues in his opening brief that he "substantially complied" with the condition that he participate in a two-year residency program because after his termination from the City Team program he immediately sought out and entered into a different residential program. However, defendant was ordered to complete a two-year program at City Team. We fail to see how defendant could have "substantially complied" with this requirement by enrolling in a new residential program after he was terminated from the City Team program.

5

program rules, which was brought to the attention of the program director.[3] The case manager testified that City Team subsequently terminated defendant from the program.[4]

Defendant's contention that City Team does not offer a two-year program has merit. However, the case manager's testimony during the revocation hearing established that the program at City Team does not typically end after only 12 months. The case manager asserted that program participants usually had two to three months left in the program after meeting the minimum requirements for graduation. He further explained that individuals that were committed to the program could have their stay extended even longer and that prior to defendant's participation in the program it was discussed that he would stay longer than usual, for approximately 18 months. Therefore, despite his arguments to the contrary, defendant was terminated from the program after only one year because he failed to abide by the program rules, not because he successfully completed the program and was forced to leave as he had exceeded the program length. There is no basis to conclude that defendant's termination from the program was not "the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court." (*People v. Zaring*, *supra*, 8 Cal.App.4th at p. 379.) His behavior during the program, including his adherence to the program rules, was certainly

---

[3] Defendant did offer some contrary testimony during the hearing, asserting that he had enrolled in school and that he used the facility pass to visit his girlfriend only a few times.

[4] Defendant argues in his reply brief that the People inaccurately asserted that he was "expelled" from the City Team program, when he in fact graduated from the program after 12 months. While the evidence establishes that defendant met the minimum requirements and graduated, the case manager from City Team expressly testified during the hearing that participants typically stay at the program for two or three months after meeting the minimum requirements for graduation, and that defendant was "terminated" from the program after staff members became aware of his rule violation.

within his control. The trial court therefore did not abuse its discretion when it revoked his probation as his violation of the condition was willful.

Lastly, defendant insists that violating City Team's rules was not in itself a violation of his probation. He contends that when the trial court initially sentenced him in January 2011, it only informed him that "any violation of the law at the misdemeanor or felony level" would be a violation of his probation. However we need not address this argument, as we already conclude that sufficient evidence supported the trial court's determination that defendant willfully violated his probation condition to complete a two-year program at City Team.

### *The Restitution Fines*

Defendant contends that the trial court erred when it imposed increased restitution fines under section 1202.4. During the original sentencing hearing, the trial court imposed restitution fines of $200 for the forgery case and $400 for the domestic violence case. Upon revocation of probation, the trial court imposed restitution fines of $1,200 for the forgery case and $2,800 for the domestic violence case. The People concede the trial court erred in imposing the increased restitution fines. We find this concession appropriate, as the original restitution fines imposed "remain[] in force despite the revocation of probation." (*People v. Chambers* (1998) 65 Cal.App.4th 819, 823.) Furthermore, because the parole revocation restitution fines cannot exceed the restitution fines, the parole revocation restitution fines must be reduced to $200 for the forgery case and $400 for the domestic violence case. (§ 1202.45; *People v. Johnson* (2003) 114 Cal.App.4th 284, 306-308.)

Additionally, when the trial court originally placed defendant on probation, it imposed probation revocation restitution fines of $200 for the forgery case and $400 for the domestic violence case under section 1202.44. The stay on these probation

7

revocation restitution fines must be lifted. (*People v. Guiffre* (2008) 167 Cal.App.4th 430, 435-436.)

## DISPOSITION

The judgment in case No. F19597 is modified by striking the $1,200 restitution fine imposed by the trial court when the court sentenced defendant to state prison. The $200 restitution fine remains in force. Thus, the judgment is modified to reflect only the $200 fine originally imposed in this case. In addition, the judgment is modified to reflect a $200 parole revocation restitution fine, which is suspended until parole is revoked. (Pen. Code, § 1202.45.) The judgment is further modified to reflect that a $200 probation revocation restitution fine (Pen. Code, §1202.44) is now due.

The judgment in case No. F19977 is modified by striking the $2,800 restitution fine imposed by the trial court when the court sentenced defendant to state prison. The $400 restitution fine remains in force. Thus, the judgment is modified to reflect only the $400 fine originally imposed in this case. In addition, the judgment is modified to reflect a $400 parole revocation restitution fine, which is suspended until parole is revoked. (Pen. Code, § 1202.45.) The judgment is further modified to reflect that a $400 probation revocation restitution fine (Pen. Code, § 1202.44) is now due.

As modified, the judgment in each case is affirmed. The trial court shall prepare amended abstracts of judgments and forward certified copies to the California Department of Corrections and Rehabilitation.

_____
                                        Premo, J.



WE CONCUR:




_____
        Rushing, P.J.




_____
        Elia, J.