Filed 10/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WENDY JOY WILLIAMS,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE et al.,<br><br>    Real Parties in Interest. | G050280<br><br>(Super. Ct. No. P-00164)<br><br>O P I N I O N |

        Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Craig E. Robison, Judge, and Gregg L. Prickett, Supervising Judge.  Petition granted.

        Frank Ospino, Public Defender, Sharon Petrosino, Chief Deputy Public Defender, Mark S. Brown, Assistant Public Defender, and Miles Jessup, Deputy Public Defender, for Petitioner.

Tony Rackauckas, District Attorney, and Matthew Lockhart, Deputy District Attorney, for Real Party in Interest the People of the State of California.

No appearance for Real Party in Interest the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations.

\*        \*        \*

In *Morrissey v. Brewer* (1972) 408 U.S. 472 (*Morrissey*), the United States Supreme Court held that a parolee is entitled to certain procedural due process protections before parole may be revoked. (*Id.* at pp. 482-484.) Among these is the right to a prompt evidentiary hearing on whether probable cause exists to believe the parolee violated a condition of parole. (*Id.* at pp. 484, 487.)

In 2011, "California began enacting legislation, commonly known as 'Realignment,' that significantly altered the state's criminal justice system." (*Valdivia v. Brown* (E.D.Cal. 2013) 956 F.Supp.2d 1125, 1126 (*Valdivia III*).) This legislation established, inter alia, a uniform process for revocation of probation, parole, and postrelease supervision of felons.[1] (Sen. Bill No. 1023 (2011-2012 Reg. Sess.) § 2(a).) The Legislature intended this uniform procedure to comply with *Morrissey's* due process requirements. (Sen. Bill No. 1023 (2011-2012 Reg. Sess.) § 2(b).) Under this uniform procedure, the court has jurisdiction over petitions for revocation of supervision (including parole). (§ 1203.2, subds. (a), (b).)[2]

---

[1] Under the uniform process, the term "supervision" refers to probation, parole, and postrelease supervision. (Pen. Code, § 1203.2, subd. (a).)
All statutory references are to the Penal Code unless otherwise stated.

[2] The uniform process became effective as to parolees on July 1, 2013. (§ 3000.08, subd. (m).) Under section 3000.08, subdivision (i), certain parolees remain subject to the jurisdiction of the Department of Corrections and Rehabilitation (DCR).

Petitioner Wendy Williams contends that, in the wake of realignment, the State of California and the Orange County Superior Court have systematically denied her and other parolees the procedural protections to which they are entitled in revocation proceedings. Williams petitions for a writ of mandate (1) ordering the Superior Court to arrange for her immediate release from custody and to dismiss the petition for revocation of her parole, and (2) ordering the Superior Court and real parties in interest (the People of the State of California and the Division of Adult Parole Operations (Parole) of the DCR) to provide her with reasonable due process prior to any further incarceration, including a *Morrissey*-compliant probable cause hearing within 15 days of arrest.

We grant Williams's petition in part.[3] We hold that, in parole revocation proceedings, a parolee is entitled to arraignment within 10 days of an arrest for a parole violation, a probable cause hearing within 15 days of the arrest, and a final hearing within 45 days of the arrest.

FACTS

*Williams's Parole Violation and Revocation Proceedings*

On May 20, 2014,[4] Williams was arrested for absconding from parole supervision. She was placed in custody at the county jail on a parole hold.

On that date, a parole agent signed a probable cause determination form identifying Williams's parole violation as absconding from parole supervision, and describing the circumstances of the charge as follows. After Williams failed to report to

---

[3] We deny Williams's petition for (1) arraignment within two business days of the arrests, (2) Parole's consideration of informal sanctions within one business day of a parole hold, and (3) an opportunity to present evidence through counsel at any time to mitigate sanctions.

[4] All dates are in the year 2014, unless otherwise stated.

her supervising agent on May 6, the agent tried to locate her the next day at the Motel 6 in Orange, where she had claimed to reside. The agent spoke with Kathy, the motel's front desk clerk, who said Williams was not a guest at the motel. On May 13, the court issued a warrant for Williams's arrest and her parole was suspended.[5] On May 20, Williams was arrested by the police for being a parolee at large.

On the probable cause determination form, a Parole unit supervisor checked a box to retain Williams's parole hold and ordered that the matter be investigated and a report submitted by May 28.

On May 28 — eight days after Williams's arrest — in the parole violation report, the parole agent and the unit supervisor recommended that Williams be returned to custody for 135 days. The report reflected that an "evidence based tool" called the "parole violation decision making instrument [PVDMI]" recommended that Williams be "continue[d] on parole with remedial sanctions," as opposed to being referred for revocation. But Parole reported it had decided to petition for revocation due to Williams's "failure to comply with his or her conditions of parole or involvement in criminal behavior," and to recommend Williams be returned to custody for 135 days. The report identified Williams's risk level as "high-drug."

The report described the circumstances of the charge similarly to the May 20 probable cause determination form, but also included the following additional details. On May 20, Tustin police detective Breeze was at the Bel Air Motel in response to a suspicious circumstance call for service. Breeze noticed a female standing in the doorway of a motel room. Breeze approached Williams, who immediately went into her room and said she did not want to talk to Breeze. Breeze contacted Kim, the motel

---

[5] The probable cause determination form states the arrest warrant was issued on May 31, but this is evidently an inadvertent transposition of the numbers "1" and "3," since the report is dated May 20 and reports a completed arrest. The People's return to defendant's petition states (with no record reference) that Parole petitioned the court on May *13* for a warrant for defendant's arrest.

4

manager, who said the occupant of the room was Wendy Williams. A records check revealed Williams was a parolee at large. Williams was arrested and taken to the police station for booking.

The "Parolee Statement" section of the May 28 report stated that, while Williams was being booked at the police station, she told the parole agent that she was sick and unable to report, and promised to report immediately if the parole hold were lifted.

In the "Evaluation" section of the May 28 report, Parole explained the reasons for its recommendation to petition for revocation and a return to custody: "Williams is a habitual absconder with no real desire or intentions to comply with her conditions of parole. Williams travels from Riverside County to Orange County leaving a trail of criminal arrests in both counties. Williams primarily lives out of motels and occasionally the streets. She has been unemployed the vast majority of her adult life. Although she has extremely supportive parents who are willing to assist her, she chooses to live out in the streets bouncing from motel to motel. Remedial sanctions were considered but Williams refused any type of treatment or structured program. This agent recommends that Williams be returned to custody at this time."

On May 29 — nine days after Williams was arrested and placed in jail — Parole petitioned the court for revocation of her parole.[6] The petition stated that on May 20, Parole had established probable cause for the alleged parole violation. Williams's arraignment was scheduled for June 5, — 16 days after Williams's arrest.

---

[6]     The petition states Williams's underlying conviction was for possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)), and that she was released on supervision on September 26, 2011. Had Williams been released five days later, on October 1, 2011, she would have qualified for postrelease community supervision rather than parole, since her underlying offense did not disqualify her from this type of supervision. (See § 3451, subd. (a).) Revocation of postrelease community supervision and parole are both governed by section 1203.2. (§§ 3455, subd. (a), 3000.08, subd. (f).)

5

On June 5, Williams moved to dismiss the revocation petition for lack of due process and pursuant to section 3044 (which gives a parolee the right to a probable cause hearing within 15 days of arrest). She also sought release from custody pending resolution of the due process and section 3044 issues.

It is undisputed that the court denied Williams's motion. According to Williams, she then sought to present evidence on probable cause, but the court denied her request "and purported to find probable cause based solely on the 'information and belief' Petition for Revocation." It is undisputed that Williams's revocation hearing "was scheduled — per Court policy — three Thursdays later on June 26," — 37 days after her arrest.

*Parole Violation and Revocation Procedures in Orange County*

According to Williams, her experience is typical in Orange County, where a 2013 survey conducted by the Orange County Public Defender staff indicated that parolees averaged just over 16 days in custody prior to their first court appearance. Thus, a majority of parolees were denied a probable cause hearing (or even arraignment and an opportunity to request release on bail and appointment of counsel) within 15 days of their arrest.

Williams describes the Orange County Superior Court's calendaring policy for parole revocation proceedings as follows.[7] The court assigns parole revocation matters only to department CJ1 (a courtroom located inside the Santa Ana jail), "with some matters sent out to other courtrooms for some hearings." The court sets such matters only on Thursdays, refusing access to department CJ1's available calendar slots on Monday, Tuesday, Wednesday and Friday. The deadline for filing parole revocation petitions to be heard on any particular Thursday is 4:00 p.m. on the immediately

_____

[7] The People's return to defendant's writ petition does not dispute the accuracy of her description of the superior court's policy.

6

preceding Monday. Thus, a revocation petition filed after the Monday deadline "will not be calendared the same week, but rather will be placed on calendar at least 10 days later on a non-holiday Thursday." This filing deadline only applies to parole revocation petitions. At the arraignment hearing, the court has refused to allow defense witnesses to testify. Such testimony is allowed only at the final revocation hearing, which is scheduled for three weeks after arraignment.

Parole has chosen, as a policy, not to exercise its statutory authority to consider flash incarceration as an intermediate sanction in lieu of parole revocation. (Couzens & Bigelow, Felony Sentencing After Realignment (Mar. 4, 2014), p. 95; at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].) The use of flash incarceration, i.e., detention in jail for up to 10 days, is statutorily encouraged. (§ 3000.08, subds. (e), (f).)

DISCUSSION

Williams contends these policies "systematically ensure that in Orange County, no parolee will ever have an audience before a magistrate within 48 hours of" arrest and "virtually no parolee in Orange County will have a time compliant (Pen. Code, § 3044, subd. (a)) or *Morrissey* compliant probable cause hearing, much less a meaningful opportunity to participate in such [a] hearing."

The People counter that, in post-realignment California, Williams is *not* entitled to arraignment within 48 hours of arrest nor is she entitled to a probable cause hearing before a court at any time.

7

# I

## RELEVANT LEGAL PRINCIPLES AND BACKGROUND

A. *Morrissey*

In *Morrissey*, *supra*, 408 U.S. 471, two petitioners alleged they were denied due process when their paroles were revoked without a hearing based on the parole board's review of the parole officer's written reports. (*Id.* at pp. 472-474). The United States Supreme Court stated that a parolee is not entitled to the full panoply of due process rights, because parole revocation is not part of a criminal prosecution and because revocation deprives a parolee of *conditional* liberty, not absolute liberty. (*Id.* at p. 480.) Nevertheless, *Morrissey* held that a parolee who has been detained for a parole violation is entitled to an informal probable cause hearing *and* a final revocation hearing. (*Id.* at pp. 485, 487.)

The purpose of the probable cause hearing is "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." (*Morrissey*, *supra*, 408 U.S. at p. 485.) This "minimal inquiry [must] be conducted at or reasonably near the place of the alleged parole violation or arrest and as *promptly as convenient after arrest while information is fresh and sources are available*." (*Ibid.*, italics added.) The determination must be made by "someone not directly involved in the case" (*ibid.*), who need not be a judicial officer (*id.* at p. 486). The parolee must be notified of the hearing and of the alleged parole violations. (*Id.* at pp. 486-487.) "At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or" witnesses. (*Id.* at p. 487.) Generally, the parolee may question any "person who has given adverse information on which parole revocation is to be based . . . ." (*Ibid.*)[8] The hearing officer must prepare "a summary . . . of what occurs at the hearing in terms of the responses of

---

[8] The hearing officer may exempt a confidential informant from "confrontation and cross-examination." (*Morrissey*, *supra*, 408 U.S. at p. 487.)

the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position." (*Ibid.*) The "'decision maker should state the reasons for his determination and indicate the evidence he relied on . . . ,'" but need not make "'formal findings of fact and conclusions of law.'" (*Ibid.*)

A final revocation hearing (if desired by the parolee) must take place within a reasonable time after the parolee is taken into custody. (*Morrissey*, *supra*, 408 U.S. at pp. 487-488.) A lapse of two months "would not appear to be unreasonable." (*Id.* at p. 488.) The parolee is entitled to written notice of the allegations; disclosure of adverse evidence; an opportunity to be heard in person, to present witnesses and documentary evidence, and generally to confront and cross-examine adverse witnesses; a "'neutral and detached' hearing body"; and "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (*Id.* at p. 489.)

The revocation decision involves two questions: Did the parolee actually violate a parole condition? (*Morrissey*, *supra*, 408 U.S. at pp. 479-480.) And, if so, "should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" (*Id.* at p. 480.) The second question is discretionary and entails a prediction of whether the individual is able "to live in society without committing antisocial acts." (*Id.* at p. 480; see *id*. at p. 484.)

*Morrissey* emphasized that it sought *not* to "create an inflexible structure for parole revocation procedures" (*Morrissey*, *supra*, 408 U.S. at p. 490), but rather to enunciate the "minimum requirements of due process" (*id*. at p. 489). It is well established "that due process is flexible and calls for such procedural protections as the particular situation demands." (*Id.* at p. 481.)


B. *Post*-Morrissey *History Until Realignment*

*Morrissey* mandated that a probable cause hearing be held "as promptly as convenient after arrest while information is fresh and sources are available." (*Morrissey*,

9

*supra*, 408 U.S. at p. 485.) Beyond this, it provided no guidance as to the maximum delay permitted under this standard.

In a class action lawsuit commenced in federal district court, the plaintiffs challenged the constitutionality of California's then-existing parole revocation system. (*Valdivia v. Davis* (E.D.Cal. 2002) 206 F.Supp.2d 1068, 1069 (*Valdivia I*).) The defendants were the "Governor of the State of California, and various state correctional officials . . . ." (*Ibid*.) The district court held "that whether viewed as compelled by *Morrissey*, or the result of a *Mathews* [*v. Eldridge* (1976) 424 U.S. 319] balancing test, the [then] current California parole revocation system violate[d] the plaintiffs' due process rights." (*Id.* at p. 1078.) At that time, California utilized "a wholly internal review system from which the parolee [was] entirely excluded." (*Id.* at p. 1070.) Parole officers were authorized to place a parolee in custody on a parole hold. (*Id.* at pp. 1069-1070.) After the parole officer and the unit supervisor reviewed the matter, they could file a parole violation report with the Board of Prison Terms, containing "information on the alleged parole violation and supporting evidence, a summary of the parolee's adjustment while on parole, and a recommendation as to what action should be taken." (*Id.* at p. 1170.) The system did *not* provide for probable cause hearings. (*Ibid.*) The Board of Prison Terms would then offer the parolee a specific term of incarceration if the parolee would waive a formal revocation hearing. If the parolee refused the offer, the parolee remained in custody. (*Ibid.*) On average, revocation hearings were held 35.2 days after the parolee's arrest and detention. (*Id.* at p. 1071.)

*Valdivia I* held that California's system allowing a 45-day delay before a probable cause hearing was unconstitutional. (*Valdivia I*, *supra*, 206 F.Supp.2d at p. 1078.) The district court also noted that *Morrissey's* "explanation of the requirements for a preliminary procedure plainly suggests that it contemplated a 'hearing' rather than some ex-parte process, for confirming probable cause." (*Valdivia I*, at p. 1075.)

10

The district court later ordered the defendants "to file a proposed remedial plan . . . ." (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1127.) The defendants asked the court for guidance on what the Constitution requires as to "'the timing and substance of the preliminary'" hearing. (*Ibid.*) Reluctantly, the court advised them that a "period of ten days strikes a reasonable balance between inevitable administrative delays and the state's interest in conducting its parole system, on the one hand, and the liberty interests of parolees, on the other." (*Ibid.*)

In a 2004 permanent injunction based on the parties' stipulation (the Injunction), the *Valdivia* court ordered, inter alia, that "notice of charges and rights . . . be served on parolees not later than three business days from the placement of a parole hold" and that probable cause hearings must be held not later than "10 business days after parolees are served notice of charges and rights." (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1128.)

In 2008, "California voters passed Proposition 9, entitled 'Victims' Bill of Rights Act of 2008: Marsy's Law,'" which enacted section 3044 and "altered a number of the parameters for the parole revocation system that had been mandated by the Injunction." (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1129.) Section 3044, subdivision (a) provides that in order "to protect a victim from harassment and abuse during the parole process," a parolee, in the event of parole revocation, is only entitled to the procedural rights listed in the statute. As relevant here, section 3044 entitles a parolee "to a probable cause hearing no later than 15 days following his or her arrest for violation of parole" (*id*., subd. (a)(1)), and an "evidentiary revocation hearing no later than 45 days following his or her arrest for violation of parole" (*id*., subd. (a)(2)).

The *Valdivia* plaintiffs moved to enjoin enforcement of parts of section 3044 which conflicted with the Injunction. (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1129.) In *Valdivia v. Brown* (E.D.Cal. 2012, No. CIV S-94-671 LKK/GGH) 2012 U.S. Dist. Lexis 8092 (*Valdivia II*), the district court ruled that certain aspects of section 3044

11

were unconstitutional, including the statute's requirement that probable cause hearings be held within 15 days after the parolee's arrest, with an evidentiary revocation hearing within 45 days. But the court's constitutional criticism of section 3044 was not based on the time limits per se, but on the lack of other constitutionally mandated requirements. *Valdivia II* held that "[t]he bare requirements in § 3044 fall short of the minimum due process set forth in *Morrisey*." (*Valdivia II*, at p. *19.) Notably absent from the limited procedural rights accorded parolees under section 3044 were "notice, a written summary of the proceedings and of the revocation decision, the opportunity to present documentary evidence and witnesses, and disclosure to the parolee of the evidence against him." (*Valdivia II*, at p. *19.) In addition, *Valdivia II* held that section 3044 "does not guarantee a prompt probable cause hearing with *all of the minimum process* set forth in *Morrissey*." (*Valdivia II*, at p. *21, italics added.)

### C. *Realignment Legislation*

In 2011, the Legislature enacted realignment legislation which amended "a broad array of statutes concerning where a defendant will serve his or her sentence and how a defendant is to be supervised on parole." (Couzens & Bigelow, *supra*, p. 6, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].) The legislation "allows lower level felons to serve their sentences in county jail . . . and to be supervised postrelease by county agencies." (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Introduction to Crimes, § 141, p. 231.) The sentence of a felon sent to *prison* must generally "include a period of parole supervision or postrelease community supervision." (§ 3000, subd. (a)(1).)

In 2012, as part of the realignment system, the Legislature amended section 1203.2 (which previously dealt solely with the revocation of probation) to apply to the revocation of *supervision* (§ 1203.2, subds. (a), (f)(3)), thereby establishing a uniform process for revocation of parole, probation, and postrelease supervision of most felons.

12

(3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2014 supp.) Punishment, § 687A, p. 121.)  Consequently, under current section 1203.2, the *court* has authority to revoke the supervision of a person on grounds specified in the statute.  (§ 1203.2, subds. (a), (b).)  Previously the Board of Parole Hearings conducted parole probable cause and revocation hearings.  (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1130.)  In enacting the realignment legislation, the Legislature declared its intent that the statutory amendments that established section 1203.2's uniform procedure "simultaneously incorporate the procedural due process protections held to apply to probation revocation procedures" under *Morrissey*, *supra*, 408 U.S. 471 and *People v. Vickers* (1972) 8 Cal.3d 451, 459 (*Vickers*) (which applied the *Morrissey* parole revocation protections to probation revocation), and their progeny.  (Sen. Bill No. 1023 (2011-2012 Reg. Sess.) § 2.)

In July 2013, the *Valdivia* court determined that, in light of California's realignment legislation that transferred substantial responsibilities for the parole system from Parole and the Board of Parole Hearings to county authorities and state courts (*Valdivia III*, *supra*, 956 F. Supp.2d at p. 1130), the *Valdivia* class action suit was no longer "the proper vehicle for ensuring that parolees receive Constitutionally-guaranteed due process protections" (*id*. at p. 1126).  The district court declared the case "moot as of July 1, 2013, when the new parole revocation system was scheduled to go fully into effect." (*Id*. at pp. 1126-1127.)[9]  The Realignment "system features major new actors (county jails; the California state courts; public defenders' offices)" who were not parties to the *Valdivia* lawsuit.  (*Id.* at p. 1135)  Accordingly, the district court dismissed the matter.  (*Id.* at p. 1127.)  It stressed, however, that "[w]hether the new system provides adequate due process must be demonstrated in practice, without untoward judicial interference until the need for intervention is clear."  (*Id*. at pp. 1136-1137.)  The court suggested that Parole's "probable cause 'determinations' [may] represent a 'rever[sion] to

---

[9]      Under the district court's order, the Injunction remains in effect for parolees arrested for violations before July 1, 2013.  (*Valdivia III*, at p. 1142.)

a wholly internal review process for assessing probable cause' [citation] of the type that this court found unconstitutional [in *Valdivia I*] in 2002. Nevertheless, for the reasons set forth above, any such infirmities will have to be addressed, if at all, in a subsequent lawsuit or lawsuits." (*Id.* at p. 1137.)

D. *Relevant Realignment Statutes*

Section 3000.08, governing parole supervision, contains the following relevant provisions. If a parole agent or peace officer has probable cause to believe a parolee is violating parole, the agent or officer may, without warrant, "arrest the person *and bring him or her before the court*, or the court may, in its discretion, issue a warrant for that person's arrest . . . ." (*Id.*, subd. (c), italics added.) If the supervising parole agency finds "good cause" that the parolee violated the law or a parole condition, the agency may impose additional conditions of supervision and "*immediate*, structured, and intermediate sanctions . . . , including flash incarceration . . . ." (*Id.*, subd. (d), italics added.) "'Flash incarceration'" is a period of detention in jail of up to 10 consecutive days. (*Id.*, subd. (e).) "Periods of 'flash incarceration' . . . are *encouraged* as one method of punishment for violations of a parolee's conditions of parole." (*Id.*, subd. (d), italics added.) "Shorter, but if necessary more frequent, periods of detention . . . shall appropriately punish a parolee while preventing the disruption in a work or home establishment that typically arises from longer periods of detention." (*Id.*, subd. (e).) "If the supervising parole agency has determined, following application of its assessment processes, that intermediate sanctions up to and including *flash incarceration* are not appropriate, the supervising parole agency shall, pursuant to Section 1203.2, petition [the court] to revoke parole." (*Id.*, subd. (f), italics added.) If the court finds the parolee has violated the conditions of parole, it may (1) return the person to parole supervision with modifications of conditions, if appropriate, (2) revoke parole and order the person to confinement in county jail, or (3) refer the person to reentry court or an evidence-based

program.  (*Ibid*.)  Section 3000.08, subdivision (f) provides that the California Judicial Council shall adopt forms and rules of court to establish "the minimum contents of supervision agency reports."

California Rules of Court, rule 4.541(e) mandates that "a report filed by the supervising agency in conjunction with a petition to revoke parole or postrelease community supervision must include the reasons for that agency's determination that intermediate sanctions without court intervention as authorized by Penal Code sections 3000.08(f) or 3454(b) are inappropriate responses to the alleged violations."

Section 1203.2, governing the procedure for revocation of supervision (including parole, postrelease community supervision, probation, and mandatory county supervision), contains the following relevant provisions.  (*Id*., subd. (a).)  If a probation or parole officer or a peace officer "has probable cause to believe that the supervised person is violating any term or condition of his or her supervision, the officer may, without warrant or other process, . . . rearrest the supervised person *and bring him or her before the court*," or the court may issue a rearrest warrant.  (*Ibid*., italics added.)  The court may revoke the supervision of the person "if the interests of justice so require and the court, in its judgment, has reason to believe from *the report of the probation or parole officer or otherwise* that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless [of] whether he or she has been prosecuted for such offenses."  (*Ibid*, italics added.)  The court may also revoke supervision upon its own motion or upon the petition of the supervised person, the probation or parole office, or the district attorney (*id*., subd. (b)(1)), based on *the probation or parole officer's written report* (*id*., subd. (b)(2)).  Nothing in section 1203.2 "affects the authority of the supervising agency to impose intermediate sanctions, including *flash incarceration*, to persons supervised on parole . . . or postrelease community supervision . . . ."  (*Id*., subd. (g), italics added.)

15

Under section 3056, subdivision (a), a "parolee awaiting a parole revocation hearing may be housed in a county jail while awaiting revocation proceedings."  Local jails and Parole have treated this provision as authorizing a parole hold, although the express language does not do so.  (Couzens & Bigelow, *supra*, p. 77, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].)  In addition to section 3056, the District Attorney cites section 3060 as authorizing parole holds, but section 3060 was repealed effective July 1, 2013.

II

THE MERITS OF WILLIAMS'S PETITION

Williams requests us to order the superior court to (1) release the parole hold and order her immediate release from custody, and (2) dismiss the revocation petition because the State denied her minimum due process.  Williams further requests an order that she "receive reasonable due process before any further incarceration, including: (i) actual consideration of the full range of informal sanctions up to and including flash incarceration within one business day of any [p]arole hold and prior to any petition for revocation; (ii) prompt access to the court and counsel without unnecessary delay (e.g., within two business days of arrest) with formal notice of the allegations against her (specifically including any rules allegedly violated and factual and evidentiary basis for that violation), (iii) an opportunity to present evidence through counsel at any time to mitigate sanctions, (iv) a full *Morrissey*-compliant probable cause hearing as soon as practical and no later than 15 days after arrest, and (v) an opportunity for final judicial adjudication of any parole revocation petition as promptly as reasonable and in any case within 45 days of arrest."

The range of remedies requested by Williams is problematic on several levels.  With regard to her request for a release from the parole hold and an immediate release from custody, we take judicial notice of the trial court minutes reflecting that on

July 3, 2014, Williams admitted the parole violation. The court reinstated parole, and committed Williams to the Orange County jail for 90 days. Williams was credited with 45 days of actual custody, and was given 45 days of conduct credit, resulting in her release on "this case only." Ordinarily, these events would render moot her prayer for immediate release, since we would no longer be able to provide the requested relief. But this is "a classic example of an issue capable of repetition yet likely to evade review." (*Great West Contractors, Inc. v. Irvine Unified School Dist.* (2010) 187 Cal.App.4th 1425, 1444.) The accumulation of time required for briefing on the merits, oral argument, and preparation of an opinion extend the time for decision beyond the delay constituting the alleged due process violation. Accordingly, we will decide the due process issues on the merits.

Based on the record before us, however, we are unable to review Williams's request that we command Parole in the future to consider the full range of intermediate sanctions up to and including flash incarceration within one business day of the placement of a parole hold. Such a review would require a more extensive evidentiary record than has been provided in this proceeding.

Consequently, we will grant limited relief, establishing certain outer time limits, beyond which the due process rights of parolees would be violated. We take this cautious approach because, while it is manifest that the due process rights of parolees are being systematically violated in Orange County, we have not been provided sufficient information to craft a more precise solution. We begin by considering an appropriate outer time limit for a *Morrissey*-compliant probable cause hearing. Other appropriate limits will follow from this determination.

A. *Probable Cause Hearing*

Williams requests that, in the event of any further incarceration, she be afforded a probable cause hearing within 15 days after arrest. The People argue Williams

17

is *not* entitled to a probable cause hearing in post-realignment California, citing *Valdivia III*, *supra*, 956 F.Supp.2d 1125, *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*), and *People v. Woodall* (2013) 216 Cal.App.4th 1221 (*Woodall*).  These cases do not support the People's contention.

The People assert *Valdivia III* "said . . . that bifurcated parole revocation proceedings are no longer required post-Realignment."  To the contrary, *Valdivia III*, which was issued on July 3, 2013 (two days after the operative date of § 3000.08), stressed that its dismissal of the action as moot was *not* intended "to say that the constitutionality of the new parole system is immune from challenge."  (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1137.)  Rather, given that the new system had scarcely started, *Valdivia III* found that any claims of constitutional infirmity were speculative and not ripe for adjudication.  (*Id.* at p. 1138.)

Neither does *Coleman* support the People's claim that because parole revocation now involves judicial proceedings, a probable cause hearing is never required. *Coleman*, a pre-realignment case, stated that "[g]enerally it is not necessary in California to afford a probationer faced with revocation proceedings" a "'probable cause' [citation] hearing of the type normally provided in the course of parole revocation proceedings." (*Coleman*, *supra*, 13 Cal.3d at p. 894.)  Our Supreme Court explained that "[p]robation revocation, unlike parole revocation, is in California a judicial proceeding *with concomitant procedural benefits for a probationer at all stages of the revocation process*. Usually a judicial determination of probable cause precedes the arrest of a probationer for violations of the conditions of his probation, and the formal revocation hearing with its full panoply of *Morrissey* procedural rights occurs *relatively soon* after the probationer has been deprived of his conditional liberty.  Since 'the precise nature of the proceedings for [probation] revocation need not be identical' to the bifurcated *Morrissey* parole revocation procedures, so long as 'equivalent due process safeguards' assure that a probationer is not arbitrarily deprived of his conditional liberty for *any significant period*

18

*of time* [citation], a unitary hearing will usually suffice in probation revocation cases to serve the purposes of the separate preliminary and formal revocation hearings outlined in *Morrissey*." (*Id.* at pp. 894-895, italics added.)

*Coleman* does not assist the People's cause. First, as noted in *Valdivia I*, it is unclear whether a prompt unitary hearing can pass constitutional muster in light of *Gagnon*, *supra*, 411 U.S. 778.[10] Second, *Coleman's* approval of a single revocation hearing is conditional; it presumes the hearing will be held relatively soon after the person is arrested, and that the person will be afforded procedural benefits at all stages of the revocation process. As Williams points out, "during the period when [a parolee] is excluded from court, no procedural benefits are provided." Third, Williams does not object to a prompt unitary hearing. She even suggests a timely unitary hearing might be in the interest of all parties: "To the extent that [she] could be provided full discovery and immediate access to court and counsel, [she] believes she could likely be prepared to proceed to a full adjudicatory (unitary) hearing within 15 days of arrest. That might well satisfy due process."

Finally, in *Woodall*, the defendant argued that section 1203.2 violates the federal Constitution (both facially and as applied to him) because "it does not require a preliminary probable cause hearing before a final revocation hearing" as required by *Morrissey*. (*Woodall*, *supra*, 216 Cal.App.4th at p. 1227.) *Woodall* rejected the defendant's as-applied challenge to the statute because the trial court hearing had comported "with the *Morrissey* standards for a preliminary probable cause hearing."

_____

[10] "A year after *Morrissey*, the [Supreme] Court explained that in that case 'we held that a parolee is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision.'" (*Valdivia I*, *supra*, 206 F.Supp.2d at p. 1075; see *Gagnon*, *supra*, 411 U.S. at pp. 781-782; see also *id*. at p. 786 ["*Morrissey* mandated preliminary and final revocation hearings"].)

(*Woodall*, at p. 1239.) The hearing took place only nine days after the defendant's arrest and he was represented by counsel and allowed to participate in the hearing. (*Id.* at p. 1228.) Most significantly, *Woodall* rejected the defendant's facial challenge to section 1203.2 by construing the statute "to *impliedly* require a probable cause hearing if there is any significant delay between the probationer's arrest and a final revocation hearing." (*Woodall*, at p. 1238, italics added.)[11]

Thus, *Morrissey*-compliant probable cause hearings are required in post-realignment California, although a prompt unitary hearing may suffice. (But see *Gagnon*, *supra*, 411 U.S. at pp. 781-782 [two separate hearings are required].) A *Morrissey*-compliant probable cause hearing requires that the parolee be given the opportunity to "appear and speak in his own behalf; he may bring letters, documents, or" witnesses, and may question any person "who has given adverse information on which parole revocation is to be based . . . ." (*Morrissey*, *supra*, 408 U.S. at p. 487.) In our view, this would include the opportunity to present evidence of Parole's failure to comply with section 3000.08, subdivision (f), which requires parole agents to employ "assessment processes"

---

[11] Over 40 years earlier, in *Vickers*, our Supreme Court observed that former section 1203.2 (which then applied only to probation revocation) "makes no provision for a preliminary determination of probable cause . . . in order to warrant the detention of a probationer until a more formal hearing is had" (*Vickers*, *supra*, 8 Cal.3d at p. 458), nor does it provide an opportunity for a probationer "to be heard in person and to present witnesses and documentary evidence, or the right to confront and examine adverse witnesses" (*id*. at p. 459). *Vickers* concluded former section 1203.2 "thus fails to meet several of the mandatory requirements of due process as set out in *Morrissey*," which our Supreme Court held were equally mandatory in probation revocation proceedings. (*Vickers*, at p. 459.)

The Legislature intended to comply with *Vickers* and *Morrissey* when it created a uniform process for revocation of supervision under post-realignment section 1203.2. Yet, section 1203.2 still makes no mention of a supervised person's right to a probable cause hearing and to present evidence. Moreover, the statute authorizes the court to revoke supervision based on the report of the probation or parole officer. The parties do not raise the issue of the statute's constitutionality.

to determine whether intermediate sanctions are appropriate before petitioning for parole revocation.

The remaining question is when exactly the hearing must be held. Given the juncture at which we find ourselves, having received several petitions for writ relief on this subject within the last year, we will provide the parties with some guidance. The post-realignment process for parole revocation has been in place for slightly over one year. It appears the Orange County system is well-established and satisfactory to the Superior Court, Parole, and the People. But the problems identified by Williams suggest the system is due for an overhaul.

In *Valdivia I*, the court took the following approach to analyzing whether California's parole revocation system was constitutional. The court "first determine[d] whether there is controlling precedent speaking to the particular procedures due at the initial stage of the parole revocation process. . . . In the absence of such controlling precedent, the task is to apply the *Mathews* process to the procedures at issue." (*Valdivia I*, *supra*, 206 F.Supp.2d at p. 1074.) The *Mathews* process is a balancing test used to resolve procedural due process claims. (*Mathews v. Eldridge*, *supra*, 424 U.S. at p. 335, (*Mathews*).)

There are potentially two guideposts regarding the time limit for a probable cause hearing in parole revocation proceedings. First, the *Valdivia* Injunction required probable cause hearings to be held within 13 business days of placement of a parole hold.[12] (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1128.) Second, section 3044, subdivision (a)(1) provides that a parolee is entitled to a probable cause hearing within 15 days of being arrested for a parole violation. These time standards are not significantly

---

[12] The Injunction required notice of charges and rights to be served on parolees within 3 business days of placement of a parole hold, and probable cause hearings to be held within 10 business days after parolees were served notice. (*Valdivia III*, *supra*, 956 F.Supp.2d at p. 1128.)

21

different. Thirteen business days will encompass at least two weekends, resulting in at least 17 calendar days, two more days than specified in section 3044.

The Injunction is a federal district court order and lacks precedential value for us. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352 ["Decisions of the lower federal courts interpreting federal law, though persuasive, are not binding on state courts"].) Moreover, the *Valdivia* lawsuit has been dismissed because both the Injunction and the action were rendered moot by realignment.

Section 3044 is still on the books. At first blush, the statute may seem inconsistent with the Legislature's intent to have all supervision revocation proceedings governed by section 1203.2. The People argue section 3044 is moot in the wake of realignment. Commentators have also noted: "It is unlikely section 3044 applies to the courts. Section 3044[, subdivision (a)] provides: 'Notwithstanding any other law, the Board of Parole Hearings or its successor in interest shall be the state's parole authority and shall be responsible for protecting victims' rights in the parole process.' Section 3044[, subdivision (b)] instructs," "'The board shall report to the Governor.' Clearly the courts are not the 'state's parole authority' after July 1, 2013. It is doubtful the courts, in the judicial branch of government, can be a successor in interest to the Board of Parole Hearings, in the executive branch. Finally, in no circumstances do the courts 'report to the Governor.'" (Couzens & Bigelow, *supra*, p. 105, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].)

Although section 3044 might appear to be superseded by the realignment statutes, the implied repeal of a statute is disfavored. (*Crosby v. Patch* (1861) 18 Cal. 438, 441.) "A new statute is not construed as an 'implied repeal' unless it is clear that the later enactment is intended to supersede the existing law." (*California Oak Foundation v. County of Tehama* (2009) 174 Cal.App.4th 1217, 1221.) Rather, the "two must be construed together, and effect given, if possible, to both." (*Crosby*, at p. 441.) Moreover, section 3044 was enacted as a voter initiative, which, by its terms, may "not be amended

by the Legislature except by a statute passed in each house by roll-call vote entered in the journal, three-fourths of the membership of each house concurring, or by a statute that becomes effective only when approved by the voters." (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, § 9, p. 132.) Section 1203.2 was passed in its current form as Senate Bill No. 76 in the California Senate by a vote of 30 senators (three-fourths of the senate membership of 40), and by the California Assembly by a vote of 54 to 25 (a margin less than three-fourths of the assembly membership). These margins thus were *less* than the 75 percent concurrence in *both* houses as required by the terms of Proposition 9 for an implied amendment or repeal of section 3044. (See also Cal. Const., art. II, § 10, subd. (c) [forbidding the Legislature from amending enactments made by voter initiative if the amendments are inconsistent with said initiative].) Thus, while it is undoubtedly true that (1) the courts are not the "successor in interest" to the Board of Parole Hearings, and (2) the Board of Parole Hearings remains charged with being "responsible for protecting victims' rights in the parole process," those portions of section 3044 intended to provide minimum standards of due process protection to parolees can easily be harmonized with section 1203.2. Prime among those minimum standards guaranteed by section 3044 are the entitlements to a probable cause hearing within 15 days and an "evidentiary revocation hearing" within 45 days of an arrest for violation of parole.[13]

Williams's writ petition requests a *Morrissey*-compliant probable cause hearing within 15 days of arrest. This standard would comply with the mandate of section 3044. We must also, of course, analyze Williams's request under the requisites of the federal Constitution. Accordingly, we turn to the *Mathews* balancing test for

---

[13] Section 3044, subdivision (a)(2) refers to the final revocation hearing as an "evidentiary revocation hearing." As discussed above, a parolee is also entitled to present evidence at the probable cause hearing.

23

procedural due process claims. That test requires a court to consider three factors. (*Mathews*, *supra*, 424 U.S. at p. 335.)

Under the first factor, we must identify "the private interest that will be affected by the official action." (*Mathews*, *supra*, 424 U.S. at p. 335.) At stake here is a parolee's conditional liberty interest. "Subject to the conditions of . . . parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." (*Morrissey*, *supra*, 408 U.S. at p. 482.) Not only is this conditional liberty valuable to the parolee, it is of value to society. "Society has a stake in . . . restoring him to normal and useful life within the law" (*id.* at p. 484) and of avoiding the costs of maintaining him in prison (*id.* at p. 477, fn. omitted).

The official action at issue here is the prolonged detention of a parolee in jail without a probable cause hearing. Such detention disrupts a parolee's work, family, and social relationships. (*Valdivia I*, *supra*, 206 F.Supp.2d at p. 1078.) The longer it continues, the more it endangers the chances that the parolee can successfully reintegrate into society. "In order to protect a parolee's liberty interest, *Morrissey* requires procedures to insure . . . that parolees are not detained without some sort of assurance that there is probable cause to suspect a parole violation." (*Ibid*.)

The second *Mathews* factor assesses "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." (*Mathews*, *supra*, 424 U.S. at p. 335.) Here, the procedures used in Orange County create a high risk of an erroneous deprivation of a parolee's liberty interest. According to the Orange County Public Defender's survey, Orange County parolees *averaged* just over 16 days in custody prior to their first court appearance. This means that some parolees may have spent considerably more days in jail before their first court hearing. At that hearing, parolees are not permitted to present evidence. Rather, the court reviews Parole's report.

24

A *Morrissey*-compliant probable cause hearing held within 15 days of arrest would be a valuable safeguard against erroneous deprivation of a parolee's liberty interest. It would increase the chances that information would still be fresh and sources would still be available at the time of the hearing. (*Morrissey*, *supra*, 408 U.S. at p. 484.) Allowing the parolee to present a defense would reduce the risk of a court making decisions based on erroneous information or erroneous evaluation.

The final *Mathews* factor considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews*, *supra*, 424 U.S. at p. 335.) Here, the State has an interest in protecting the public and "being able to return the individual to imprisonment without the burden of a new adversary criminal trial" in the event of an actual parole violation. (*Morrissey*, *supra*, 408 U.S. at p. 483.) "Yet, the State has no interest in revoking parole without some informal procedural guarantees." (*Ibid.*) Indeed, as Williams argues, the State has an interest "in *enforcement* of rules providing for evidence based sanctions to avoid unnecessary and counterproductive incarcerations before the damage is done (e.g., loss of [the parolee's] housing, social support ties, and community stability)."

As to burdens, a 15-day time limit will probably require the Superior Court to change its calendaring policy on these matters. Fortunately, according to Williams, department CJ1 of the Orange County Superior Court is open every day of the week (not just Thursdays), is located in the Central Jail in Santa Ana, is staffed daily by a judge with "a full court support staff, representatives of the District Attorney and the Public Defender (as well as alternate defense services), and several Sheriff's deputies." Apart from scheduling concerns, the new evidentiary probable cause hearings will consume more court time. Of course, if the parole violation is also charged as a new felony, a preliminary hearing must be set in any event within 10 court days of defendant's arraignment unless waived. (See § 859b.) Under these circumstances, we would

25

anticipate the preliminary hearing would also address the probable cause issue on the parole violation, resulting in no additional court time. If the parole violation does not result in additional criminal charges, we anticipate that the probable cause hearing would not consume much time. We do not believe the additional burdens imposed upon the court or the district attorney outweigh the benefits to both the government and the parolee in avoiding further incarceration where the alleged violation is shown to lack probable cause.

As to the burdens placed on Parole, the 15-day time limit for a probable cause hearing may require the division to make faster decisions on whether to seek revocation. This burden should not be insurmountable, especially if Parole and the court collaborate to establish a workable system. And we note that Parole has chosen not to respond to our order to show cause.

B. *Notice and Prompt Access to Court and Counsel*

In the event of further incarceration, Williams contends she is entitled to arraignment within 48 hours of arrest under sections 825 and 849 and *County of Riverside v. McLaughlin* (1991) 500 U.S. 44 (*McLaughlin*). But section 849 and *McLaughlin* apply to defendants arrested without a warrant prior to a criminal trial. (§ 849, subd. (a); *McLaughlin*, at p. 52.) Williams was arrested pursuant to a warrant.[14] And, the "revocation of parole is not part of a criminal prosecution," but "arises after the end of the criminal prosecution, including imposition of sentence." (*Morrissey*, *supra*, 408 U.S. at p. 480.)

---

[14] Parolees arrested without a warrant may be entitled to a prompt appearance in court. Under section 3000.08, subdivision (c), if an officer arrests a parolee without a warrant, the officer must "*bring him or her before the court*." (Italics added; see also § 1203.2, subd. (a) [same text].)

Section 825 governs arraignment after arrest made pursuant to warrant, but it too is inapplicable to Williams because it concerns defendants in a criminal prosecution and possibly parolees on *new charges*. (§ 825, subd. (a)(1); *People v. Hughes* (1974) 38 Cal.App.3d 670, 672, 674 [parolee arrested on new charges was entitled to § 825 protection]; Cal. Const., art. I, § 14 [person charged with felony must be taken without unnecessary delay before magistrate].) As our Supreme Court has "observed, 'the arraignment requirement of Penal Code section 825 has been interpreted as not applying when [as here] a parole hold on other matters has been placed upon the defendant.'" (*People v. Hughes* (2002) 27 Cal.4th 287, 326.)

Nevertheless, in order to protect Williams's right under *Morrissey* to *meaningfully* participate in a probable cause hearing, she is entitled to receive timely access to counsel and notice of the allegations against her. She must receive them well before the probable cause hearing, so she has time to prepare a defense. In *Vickers*, *supra*, 8 Cal.3d at p. 461, our Supreme Court held that "the efficient administration of justice [generally] requires that the defendant be assisted by . . . counsel at all revocation proceedings . . . ."

On the other hand, if Parole decides relatively quickly to impose intermediate sanctions or additional parole conditions (without court intervention), the issue of a parolee's access to the court and counsel is obviated. Parole "should be given a reasonable period of time to investigate and review the circumstances of a violation, and to determine the appropriate level of response, including 'flash incarceration.' A reasonable period should be allowed for the implementation of any intermediate sanction, such as acceptance into a suitable rehabilitation program." (Couzens & Bigelow, *supra*, p. 93; at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].) )

In this context, a reasonable period cannot be long, however. Under section 3000.08, subdivision (d), if a supervising parole agency finds good cause that a parolee

27

has committed a violation and the agency decides to impose intermediate sanctions, it must do so *immediately*. We recognize that in cases like Williams's, where parole absconding is a real risk, the State has an interest in protecting the public and in keeping track of the parolee. But a parole hold cannot be maintained indefinitely consistent with due process.

Yet, because there is no express statutory authorization for parole holds, there is no statutory regulation of them. Under the current system used in Orange County, Parole can keep a parolee in custody on a parole hold until the filing of a revocation petition, at which time the court clearly acquires jurisdiction over the parolee. "The precise nature of the court's authority in the absence of a revocation petition being filed is unclear because of [Parole's] ability to issue such holds and ambiguous nature of the applicable [statutes]." (Couzens & Bigelow, *supra*, p. 89, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].) Parole does have an independent duty under section 3000.08, subdivision (d), to determine whether there is "good cause" to believe the parolee has committed a violation of supervision (which arguably amounts to "an early determination of probable cause for detention"). (Couzens & Bigelow, *supra*, p. 89, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].) But the "statute does not specify when a petition to revoke supervision must be filed; indeed, [Parole] is not permitted to file a petition unless it determines intermediate sanctions are no longer appropriate." (*Ibid.*) On the other hand, sections 1203.2 and 3000.08 require that, in the event of a warrantless arrest, the supervising officer must bring the supervised person "*before the court*." (§§ 1203.2, subd. (a), 3000.08, subd. (c), italics added.) "Giving the emphasized language its most logical effect, it seems the reason for requiring the person to be brought before the court is to avoid the arrested person languishing in custody without any judicial involvement. Stated differently, the parolee "'. . . shall not be detained" pending "the hearings mandated by *Morrissey* and

28

*Vickers* for an 'undue time.'"'" (Couzens & Bigelow, *supra*, p. 90, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].)

In Williams's case, on the day she was arrested, Parole prepared a probable cause determination form describing the circumstances of the charge. On the form, a unit supervisor checked the box for "Retain Hold" and ordered another report to be filed *eight* days later. Exactly eight days later, Parole prepared a parole violation report stating, inter alia, that Parole had considered remedial sanctions, but Williams had refused any type of treatment or structured program. The next day Parole petitioned for revocation of Williams's parole. By then, she had been held in jail for 10 days (including her arrest day), i.e., the same number of days as the maximum flash incarceration. This delay is a principal reason why Williams was not arraigned until 16 days after her arrest. Whether Parole needed eight days to determine that remedial sanctions were inappropriate is unclear.

Williams asserts Parole "has demonstrated the ability to process revocation matters, including unit supervisor review and sign-off[,] within one business day." She also claims (and the district attorney does not deny) that the superior court provides arraignment within 48 hours to all prisoners "other than parolees facing *only* parole violations." She concludes Parole and the superior court can *easily* provide her with court access within 48 hours.

We decline to specify such a short time fuse. Parole must have adequate time to consider intermediate sanctions. If it decides to continue a person's parole, no arraignment is necessary. The valuable time of all the players (the court, prosecutor, defense counsel, and parole agent) should not be consumed unnecessarily. On the other hand, the present procedures need overhaul. As noted, by allowing Williams to languish in jail for nine days while a report was prepared, and another seven days before she was brought before the court, Parole has detained her for 16 days without access to the court

29

or counsel. This is a longer period of time than permitted by the sanction of flash incarceration — a sanction that Parole has reportedly decided not to use.

Accordingly, we conclude that under the present realignment procedures a parolee held in custody under a parole hold must be brought before the court for arraignment no later than the permissible period of flash incarceration, i.e., 10 days after arrest. We do not pass upon the constitutionality of the flash incarceration procedure. We note only that a parolee must be brought before the court for arraignment no later than Parole is currently authorized by statute to hold the parolee without court intervention. Thus we set the 10 day limit as an outer boundary. We do *not* determine whether due process requires a shorter time before arraignment. On this record, we lack sufficient information to do so. Given Parole's lack of participation in this writ proceeding, that is all we can do. We believe a period of 10 days after arrest strikes an appropriate balance between Parole's need for time to fulfill its statutory duty to consider intermediate sanctions and the parolee's need to obtain notice and counsel reasonably in advance of the probable cause hearing, which must, as discussed above, take place within 15 days after arrest.

### C. *Final Revocation Hearing*

Williams requests "an opportunity for final judicial adjudication of any parole revocation petition as promptly as reasonable and in any case within 45 days of arrest."

According to Williams, the court's standard procedure is "to set contested parole revocation hearings demanded at arraignment . . . typically [on] Thursday or Friday three weeks after arraignment." Now that we have held arraignment must take place within 10 days after arrest, and a probable cause hearing within 15 days after arrest, the final hearing would fall within 45 days of arrest even if the court maintained this same procedure. Thus, the burden on the court is not great. A 45-day deadline would

30

alleviate the risk that the parolee could languish in jail while support systems at home and at work fray. It would increase the chance that evidence would still be available and the parolee would not be erroneously deprived of conditional liberty. Moreover, it is also the deadline specified in section 3044 for the final revocation hearing.

        D. *Consideration of Intermediate Sanctions Including Flash Incarceration*

Williams also has requested that we order Parole to give "actual consideration of the full range of informal sanctions up to and including flash incarceration within one business day of any [parole] hold and prior to any petition for revocation." Williams is correct that section 3000.08, subdivision (f) establishes, in her words, a "legislative curb upon the discretion" of parole agents. Section 3000.08, subdivision (f) *requires* Parole to consider using intermediate sanctions before seeking revocation, and section 3000.08, subdivision (d) *encourages* the use of flash incarceration. Nevertheless, we are told that Parole "has decided not to use the sanction" of flash incarceration. (Couzens & Bigelow, *supra*, p. 95, at <www.courts.ca.gov/partners/documents/felony_sentencing.pdf> [as of Sept. 23, 2014].)

We have insufficient evidence to make any order regarding Parole's performance of its statutory duty to consider all intermediate sanctions. We will not presume on this record that Parole is not fulfilling its statutory duty to do so. But, as stated above, a parolee is entitled to present evidence at the probable cause hearing of Parole's failure adequately to consider intermediate sanctions. And, Parole's report filed with its revocation petition must state the specific reasons (individualized to the particular parolee, as opposed to a generic statement) for its determination that intermediate sanctions "are inappropriate responses to the alleged violations." (Cal. Rules of Court, rule 4.541(e).)

31

E.  *Opportunity to Present Evidence Through Counsel at Any Time to Mitigate Sanctions*

Williams has presented inadequate argument and no citation to legal authority concerning her claim she is entitled to an opportunity to present evidence through counsel to mitigate sanctions *at any time*.  We therefore treat it as waived.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.)

DISPOSITION

Let a writ of mandate issue ordering Parole and the Orange County Superior Court, consistent with the views expressed in this opinion, to provide reasonable due process to Williams in the event of any further incarceration, including (1) arraignment within 10 days of any further arrest for a parole violation, (2) a *Morrissey*-compliant probable cause hearing within 15 days of any further arrest, and (3) a final revocation hearing on an alleged parole violation within 45 days of any further arrest. This order does not affect any shorter time periods that may be required if new criminal charges are instituted.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

THOMPSON, J.

32