Filed 8/29/16  P. v. Mendez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051667 |
| v. | (Super. Ct. No. P00227) |
| STEVEN MENDEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William Lee Evans, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI., § 6 of the Cal. Const.)  Reversed.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

## I. Introduction

The trial court found that Steven Mendez violated the conditions of his parole by failing to keep his global positioning system (GPS) device charged. The court sentenced Mendez to 62 days in jail with 62 days of credit and restored his parole. On appeal,[1] Mendez argues (1) substantial evidence did not support a finding that he failed to charge his GPS device as required by his parole conditions and (2) the court abused its discretion by revoking his parole. We conclude the evidence supported a finding that Mendez violated parole, but that parole revocation was not an appropriate disposition because the trial court found the violation was the result of negligence. We therefore reverse the parole revocation order and remand.

## II. Facts

In 2013, Mendez was convicted of contacting a minor with intent to have sex (Pen. Code, § 288.3), sentenced to eight months in prison, and ordered to register as a sex offender. After his release from incarceration, Mendez failed to register as a sex offender and was sentenced to 16 months in prison.

Mendez was released on parole in December 2014. California Department of Corrections and Rehabilitation Parole Agent Steven Truong was Mendez's assigned parole agent. On January 6, 2015, Truong placed a GPS device on Mendez, who signed the conditions of parole. Among the conditions of parole was that Mendez wear a GPS device. Mendez was required to charge the GPS device "for 1 hour within 10 minutes of receiving a low battery alert" and "at least two times per day (every 12 hours) for at least 1 full hour for each charging time." Mendez was required to contact his parole agent "immediately" whenever the GPS device vibrated and/or made a beep.

---

[1] A parole revocation order is a postjudgment order affecting the substantial rights of the party, and is therefore appealable. (Pen. Code, § 1237, subd. (b).)

2

On January 6, Truong tested Mendez's GPS device, confirmed it charged properly, and gave Mendez a new charger. Truong also confirmed the GPS device could receive both audible and vibrating alerts. Over the following five days, Mendez charged his GPS device.

At about 6:00 a.m. on Monday, January 12, 2015, Truong received text message alerts that the battery on Mendez's GPS device was dead. About 25 minutes later, Truong found Mendez lying down beneath a stairwell in an alley. Truong inspected Mendez's GPS device and determined it had a dead battery. The device showed no signs of defect. When asked if he had charged his GPS device, Mendez said he lost the charger.

Truong, on behalf of the California Department of Corrections and Rehabilitation, filed a petition for revocation of Mendez's parole. After an evidentiary hearing, at which Truong testified, the trial court found that Mendez had violated the terms of his parole and sentenced him to 62 days in jail with 62 days of credit. The court found the violation was "negligence" and "a relatively minor oversight on Mr. Mendez's part" and restored him to parole with the same terms and conditions. Mendez timely appealed.

## III.  Discussion

### A.  *Mootness*

The Attorney General argues the appeal is moot because Mendez is no longer incarcerated due to the parole violation. We conclude the appeal is not moot because "[s]hould defendant suffer a further criminal conviction, the parole revocation may be used as part of his sentencing determination." (*People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412.)

3

B. *Sufficiency of the Evidence*

In assessing the sufficiency of the evidence to support a parole revocation order, we review the record to determine whether "there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848.)

As a condition of parole, Mendez was required to charge his GPS "at least two times per day (every 12 hours) for at least 1 full hour for each charging time." Truong testified he had information that Mendez did charge his GPS device on January 11, 2015. At about 6:00 a.m. on January 12, Truong was notified that the battery on Mendez's device was dead. Truong testified he located Mendez, who said he had lost the charger.

Mendez argues the evidence is insufficient because Truong testified that he had received the dead battery alert on January 11, which might have been within 12 hours of a charge. Truong initially testified that he believed he received the dead battery alert January 11, "a Monday." He later confirmed that he arrested Mendez and inspected his GPS device on January 12. The parole revocation petition alleged the violation occurred on January 12, and the parole violation report states that "[o]n 01/12/15 at approximately 0550 hours, the Agent of Record was contacted by STOP a second time and was advised the parolee was again in 'Dead Battery.'"

In addition, Truong testified that charging the battery for one hour twice a day will prevent a low battery signal. Because Truong testified he received a dead battery signal, a reasonable inference is that Mendez had not charged the battery on the GPS device within 12 hours of the time of that signal, regardless whether the battery went dead on January 11 or January 12. Substantial evidence supported the trial court's finding that Mendez violated parole.

4

C. *Parole Revocation*

"If the court finds the parolee has violated the conditions of parole, it may (1) return the person to parole supervision with modifications of conditions, if appropriate, (2) revoke parole and order the person to confinement in county jail, or (3) refer the person to reentry court or an evidence-based program." (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 652; see Pen. Code, § 3000.08, subd. (f).) Whether to revoke parole lies within the trial court's discretion. (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981-982 [revocation of probation].)[2]

A parole violation must be willful to justify revocation of parole. (*People v. Rodriguez* (2013) 222 Cal.App.4th 578, 594 [probation revocation]; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 [probation revocation]; *People v. Galvan*, *supra*, 155 Cal.App.4th at p. 982.) In criminal law, willfulness requires "'simply a purpose or willingness to commit the act . . . ,' without regard to motive, intent to injure, or knowledge of the act's prohibited character. [Citation.] The term[] impl[ies] that the person knows what he is doing, intends to do what he is doing, and is a free agent. [Citation.] Stated another way, the term 'willful' requires only that the prohibited act occur intentionally. [Citations.]" (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1438.)

---

[2] In 2012, as part of the realignment system, the Legislature amended Penal Code section 1203.2 (which previously dealt solely with the revocation of probation) to apply to the revocation of supervision (Pen. Code, § 1203.2, subds. (a), (f)(3)), thereby establishing a uniform process for revocation of parole, probation, and postrelease supervision of most felons. (*Williams v. Superior Court*, *supra*, 230 Cal.App.4th at pp. 650-651.) "Consequently, under current section 1203.2, the *court* has authority to revoke the supervision of a person on grounds specified in the statute." (*Id.* at p. 651.) "In enacting the realignment legislation, the Legislature declared its intent that the statutory amendments that established section 1203.2's uniform procedure 'simultaneously incorporate the procedural due process protections held to apply to probation revocation procedures' under *Morrissey* [*v. Brewer* (1972)] 408 U.S. 471 and *People v. Vickers* (1972) 8 Cal.3d 451, 459 . . . (which applied the *Morrissey* parole revocation protections to probation revocation), and their progeny." (*Ibid.*)

The trial court in this case found that Mendez's failure to charge the battery on the GPS device "was negligence" and "a relatively minor oversight." Negligence does not equate to willfulness. Because the court found that the parole violation was negligent, revocation of parole was not the appropriate disposition.

The Attorney General argues Mendez's conduct was willful because "there were no circumstances that made it impossible for him to comply with the GPS charging conditions or contact his parole agent if he had indeed lost his charger." In *People v. Galvan*, *supra*, 155 Cal.App.4th at page 983, the defendant failed to report to probation within 24 hours of his release from custody because he had been deported upon his release. In *People v. Cervantes*, *supra*, 175 Cal.App.4th at pages 295-297, the defendant missed his review hearing because he was in the custody of immigration authorities. In each case, the Court of Appeal found the defendant's failure to comply with the terms of probation was not willful because compliance was impossible. (See *People v. Galvan*, *supra*, at pp. 983-984.) Impossibility, though sufficient, is not necessary to show lack of willfulness. Negligence also suffices, and the trial court found that Mendez acted negligently.

We note that the trial court never expressly ordered revocation of parole. The court found that Mendez had violated parole, sentenced him to 62 days in jail (which was the exact amount of his actual custody and conduct credits during parole suspension), and ordered parole reinstated. The effect of the court's order was to return Mendez immediately to parole supervision. However, the court did impose a sentence of 62 days in jail on the revocation petition, and it therefore appears the court did intend to "[r]evoke parole and order the person to confinement in the county jail." (Pen. Code, § 3000.08, subd. (f)(2).) As we have concluded, the trial court could not order parole revocation because it found Mendez's parole violation was negligent. The Attorney General does not argue we should remand for consideration of a different disposition.

6

## IV.  Disposition

The parole revocation order is reversed.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.